865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael L. MEAD, Plaintiff-Appellant,
v.
Robert E. HELM, Defendant-Appellee.
 No. 88-1015.
 United States Court of Appeals, Sixth Circuit.
 Jan. 4, 1989.
 
 On Appeal from the United States District Court for the Eastern District of Michigan.
 Before KENNEDY, RALPH B. GUY, Jr., and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Michael Mead, plaintiff-creditor, appeals the denial of his motion to reopen defendant-debtor Robert E. Helm's bankruptcy case and for relief from the automatic stay. Mead also claims that the district court erred in finding Mead had adequate notice and opportunity to contest the administrative closure of Helm's estate and finding Mead's claim was discharged by the administrative closure of Helm's estate. For the reasons that follow, we affirm the district court's order.
 
 
 2
 Robert E. Helm, an attorney, filed for bankruptcy in 1982 or early 1983,[1] and received a discharge in June 1985. In December 1985, Helm was served with a lawsuit alleging malpractice stemming from his earlier failure, as a court appointed appellate attorney, to perfect an appeal from a criminal conviction for which Mead was incarcerated over eight years.[2] Upon Mead's release from prison, another court appointed attorney obtained a delayed appeal and reversal of Mead's conviction.
 
 
 3
 In March 1986, Helm petitioned the bankruptcy court to reopen his file and add Mead's malpractice claim to his scheduled debts. In his motion Helm asserted that he was unaware of Mead's claim at the time of his original filing. On March 21, 1986, the bankruptcy court entered an order reopening Helm's bankruptcy proceedings, and a hearing was scheduled for April 17, 1986.
 
 
 4
 Mead filed written objections to Helm's motion to reopen, which challenged Helm's assertion that Mead's claim was inadvertently omitted from his bankruptcy schedules. Mead argued that Helm knew or should have known of his claim at the time of filing his bankruptcy petition by virtue of Helm's cooperation with an investigation into Helm's conduct by the Attorney Grievance Commission that resulted in a consensual order of reprimand issued against Helm. Therefore, Mead submitted, Helm's knowing failure originally to include Mead's debt, coupled with the prejudice to Mead that would result from reopening by virtue of expenses incurred in pursuit of the malpractice claim, militated against reopening and amending Helm's schedules.
 
 
 5
 Mead's objections clearly reflect Mead's understanding that the purpose of Helm's motion to reopen and amend his schedule was to obtain a discharge of Mead's claim. "The Debtor seeks to reopen the file, amend his Schedules to list Michael Mead as a creditor, and thus discharge the legal malpractice claim that Mead has against the Debtor." Notwithstanding Mead's written objections to Helm's motion to reopen, Mead was not represented at the subsequent May 29, 1986, hearing on the motion[3] due to an administrative error in his counsel's office. The court held the hearing, nevertheless, and ordered Helm's case reopened to amend his schedule of debts to include Mead's claim.
 
 
 6
 In June 1986, Mead filed a motion for reconsideration of the order reopening Helm's case. The order was denied, in part, because the motion was untimely. Mead did not appeal the denial of his motion for reconsideration.
 
 
 7
 In October 1986, Mead filed a motion seeking release from the automatic stay. The bankruptcy court ruled that the estate was closed and this motion could not be heard unless Mead moved to reopen. In November 1986, Mead made inquiry and learned that Helm's reopened case had been closed sometime in September 1986 and that his claim had been discharged. In January 1987, he filed a motion to reopen the case and for relief from the automatic stay in order to pursue his malpractice claim. After a hearing this motion was denied. Mead appealed to the district court where the bankruptcy court's ruling was affirmed. Mead now appeals.
 
 
 8
 Because Helm's was a "no asset" estate, Mead seeks to recover from any available insurance companies or employers potentially liable for Helm's alleged malpractice rather than from Helm individually.
 
 I.
 
 9
 Initially, we note that our review of any factual findings made is limited to determining whether the bankruptcy court's findings are clearly erroneous. In re Albert H. Caldwell, 851 F.2d 852, 857 (6th Cir.1988).
 
 
 10
 This standard of review is reiterated in Bankruptcy Rule 8013, which provides:
 
 
 11
 On an appeal the district court ... may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the bankruptcy court to judge the credibility of the witnesses.
 
 
 12
 Advisory committee notes to rule 8013 indicate that the rule tracks the standard for appellate review in Fed.R.Civ.P. 52. Under that rule:
 
 
 13
 "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court....
 
 
 14
 Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). Conclusions of law, however, are subject to de novo review. In re Caldwell, 851 F.2d at 857. Thus, we must determine whether the bankruptcy court's factual findings are clearly erroneous and whether its legal conclusions are correct.
 
 
 15
 On appeal, Mead asserts several issues. Our review, however, is confined to those issues presented before the district court. Boone Coal and Timber Co. v. Polan, 787 F.2d 1056, 1064 (6th Cir.1986). In the district court Mead challenged the propriety of the court's decision to grant Helm's motion to reopen Helm's bankruptcy and the denial of Mead's subsequent motion to reopen it.
 
 
 16
 With regard to Helm's motion to reopen, we note that Mead never appealed the bankruptcy court's July 7, 1986, denial of his motion to reconsider its order granting Helm's motion to reopen. If an appeal is not made within ten days of the order, the order becomes final and unappealable. See Bankruptcy Rule 8002 and advisory committee notes. Therefore, because of Mead's failure to timely appeal, we decline to consider whether the district court erred in granting Helm's motion to reopen.
 
 
 17
 The remaining issue before us is whether the district court erred in upholding the bankruptcy court's denial of Mead's motion to reopen Helm's bankruptcy case. To that end, the district court also considered Mead's opportunity to be heard prior to the May 29, 1986, order reopening Helm's estate and whether the bankruptcy court intended that order to be a determination that Mead's claim was discharged.
 
 
 18
 We are guided by section 350 of the Bankruptcy Code (Code) and Bankruptcy Rule 5010. Bankruptcy Rule 5010 provides for reopening a case upon motion of the debtor or other party in interest pursuant to section 350(b) of the Code. Section 350 provides:
 
 
 19
 (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
 
 
 20
 (b) A case may be reopened in the court in which such a case was closed to administer assets, to accord relief to the debtor, or for other cause.
 
 
 21
 Thus, section 350(b) confers discretion to reopen a bankruptcy case upon the bankruptcy court. The basis for Mead's motion to reopen Helm's case was not to administer assets or accord relief to Helm. Hence, it had to be for "other cause." Mead's "other cause" was his contention that unless his motion to reopen and lift the automatic stay was granted, Mead would remain uncompensated for Helm's malpractice and his prolonged and unjustifiable incarceration. (App. 60).
 
 
 22
 What constitutes "other cause" for reopening a case is left to the court's discretion. In In re Fair Creamery Co., 193 F.2d 5 (6th Cir.1951) (per curiam), the court refused to reopen a case when petitioners were guilty of laches, further administration of the estate would not yield additional estate assets, and no evidence of fraud was offered. In other circuits, courts have refused to reopen cases when the creditor was experienced in business matters and had notice of the last filing date. In re Sheerin, 21 Bankr. 438 (1st Cir.1982).
 
 
 23
 The overriding principle is that section 350(b) confers upon the bankruptcy court broad discretion in determining whether to reopen a case and its decision to grant or deny a motion to reopen is binding absent a clear abuse of discretion. In re Rosinski, 759 F.2d 539, 540-41 (6th Cir.1985).
 
 
 24
 In denying Mead's motion to reopen, the bankruptcy judge considered the motion itself and testimony from a hearing at which both Helm and Mead were represented by counsel. At the hearing, Mead indicated his intent to obtain a default judgment against Helm on the malpractice claim and then either sue Helm's insurance company or rely on a potential cross claim by Helm to bring the insurance companies in as third parties. The bankruptcy judge determined that the viability of Mead's approach depended on whether or not Helm asserted his discharge as a defense and whether Helm gave Mead the right to assert his claim, if any, against the insurance company. (App. 73). Finding Mead's motion to be based on speculation, noting Helm's desire to insulate his current employment from Mead's claim, and citing the need for "peace and quiet," the bankruptcy judge denied the motion.
 
 
 25
 In exercising its discretion to deny Mead's motion to reopen, the bankruptcy court determined that Mead failed to offer sufficient "other cause" evidence within the meaning of section 350(b) of the Code to warrant reopening Helm's case. As discussed below, Mead raised the same objections to support his motion to reopen months after these objections had been raised, considered, and decided relative to Helm's motion to reopen. Therefore, no new issues would have been before the bankruptcy court had it exercised its discretion to grant Mead's motion to reopen. Moreover, because Helm had a no-asset bankruptcy, there were no distributions to the originally scheduled creditors. We find no cause to disturb the factual underpinnings of the bankruptcy judge's determination and find no abuse of discretion in his refusal to grant Mead's motion.
 
 II.
 
 26
 Mead next argues that the district court erred in finding he was given adequate notice to contest the administrative closure of Helm's reopened estate. He also claims that the district court erred in finding Mead's claim was discharged by the administrative closure of Helm's estate.
 
 
 27
 Resolution of these claims, taken together, requires a review of pertinent bankruptcy procedure concerning discharge of debts and closure of the estate and how these procedures operate in the context of reopened bankruptcy proceedings. The pertinent discharge provisions of the Code include sections 727 and 523 of the Code and Bankruptcy Rule 4004.
 
 
 28
 Section 727(a) of the Code provides that the court shall grant the debtor a discharge with certain exceptions specified in section 727(a)(1-10). Section 727(b) provides, in essence, that except as provided in section 523 of the Code, a discharge under section 727(a) discharges the debtor from all debts arising or deemed to have arisen prior to the date of the order for relief under chapter seven.
 
 
 29
 Section 523 of the Code renders certain debts nondischargeable notwithstanding the grant of a 727(a) discharge. For example, a debt for "willful and malicious injury by the debtor to another entity" is not dischargeable.
 
 
 30
 Pursuant to section 727(c)(1) and (2) of the Code, a trustee, creditor, or United States trustee may object to a grant of discharge under section 727(a) or request the court to have the trustee examine the debtor's acts and conduct to ascertain whether a basis exists to deny discharge.
 
 
 31
 Bankruptcy Rule 4004 also governs the grant or denial of a discharge. It requires a complaint objecting to a debtor's discharge in a chapter seven liquidation case to be filed not more than sixty days after the first date of the creditors meeting. A complaint objecting to discharge initiates an adversary proceeding and the grant or denial of discharge must await the outcome of the proceeding. Bankruptcy Rule 4004(d) and advisory committee notes. The burden of proof in objecting to a discharge is on the plaintiff. Bankruptcy Rule 4005. If no complaint is filed within the allocated time, the court shall grant a discharge "forthwith" unless (1) the debtor is not an individual, (2) a complaint objecting to the discharge has been filed, or (3) the debtor has filed a waiver under section 727(a)(10). Bankruptcy Rule 4004(c). Bankruptcy Rule 4004(b) allows the court to extend the time for filing a complaint objecting to discharge if the motion is made before such time expires.
 
 
 32
 Similarly, a creditor must initiate bankruptcy court proceedings to determine the dischargeability of a debt under section 523 of the Code. If the creditor fails to act, the debt is discharged pursuant to section 523(c) of the Code. Bankruptcy Rule 4007 governs the determination of dischargeability of a debt. That rule provides that a complaint to determine the dischargeability of a debt pursuant to section 523(c) must be filed within sixty days of the first date set for the creditors meeting.
 
 
 33
 With respect to administrative closure of a bankruptcy proceeding, section 350(a) of the Code and Bankruptcy Rule 5009 provide that the court shall close the case once it has discharged the trustee and the estate is fully administered. Bankruptcy Rule 5010 excuses the appointment of a trustee in a reopened case when it is unnecessary to protect creditors' interests, debtors' interests, or to assure efficient case administration. Because Helm's was a no-asset estate, no trustee was necessary.
 
 
 34
 Thus, in a chapter seven bankruptcy like Helm's, discharge occurs as a matter of course unless it is challenged. Once the case is fully administered, it is closed.
 
 
 35
 We note that in cases allowing a debtor to reopen a bankruptcy case to list previously omitted debts, courts have indicated that the previously omitted creditor must be given a "reasonable time" in which to object to a discharge or challenge the dischargeability of the newly added debt. In In re Maddox, 62 Bankr. 510 (E.D.N.Y.1986), debtors sought to reopen their closed bankruptcy proceedings in order to add previously omitted creditors. In allowing the proceedings to be reopened, the court found that the omission of the creditor was innocent and resulted from ignorance of his debt. Moreover, the court noted that in a no-asset case in which the time to file claims has never expired because no notice of distribution was given, nothing precludes the reopening of closed proceedings. Most importantly for our purposes, the court stated, "Of course, each added creditor must be accorded a reasonable period of time within which to object to the dischargeability of the debt owed it under 523(a)(2), (4) and (6). The discharge having already issued, there is no longer any right to object to it." Id. at 514.
 
 
 36
 Similarly, in In re Mitchell, 47 Bankr. 209 (N.D.Tex.1985), debtors sought to reopen their bankruptcy estate to include previously inadvertently unscheduled debts. The inclusion of the debts "would effectively discharge Debtors' obligation to Bank unless Bank filed an objection to discharge under a permitted extension." Id. at 210. The debtors were granted leave to reopen and amend their schedules to include the creditor. More importantly, the court also granted the creditor additional time to file an objection to the debtors' discharge so as to accord it roughly the same status as originally listed creditors. See also In re Jone C. Berg, --- Bankr. ---- (D.Mont.1987) (creditor granted sixty days to object to dischargeability of debt added to debtor's schedules pursuant to order reopening debtor's bankruptcy proceedings).
 
 
 37
 On March 25, 1986, Mead received notice of Helm's motion to reopen his case and amend his schedules to include Mead's claim. He also received a copy of the bankruptcy court's March 21, 1986, order reopening the file. Mead was aware that the purpose of Helm's motion to reopen his bankruptcy was to obtain a discharge of Mead's claim. Thus, he knew that a discharge of Mead's claim would ensue absent any objection. Consequently, Mead filed written objections as to why Helm's motion to reopen, amend schedules, and ultimately obtain a discharge, were inappropriate. These objections may fairly be construed as objections to discharge or the dischargeability of Mead's claim. Although a hearing was scheduled on Helm's motion, it was adjourned on Mead's counsel's request and Mead's counsel missed the rescheduled hearing. Before rendering his May 29, 1986, order reopening Helm's bankruptcy to amend his schedules to include Mead's claim, the judge considered and rejected Mead's substantive objections. A copy of the bankruptcy court's May 29, 1986, order was sent to Mead's counsel on June 5, 1986. (App. 57).
 
 
 38
 Based on these facts, we find that the district court correctly determined that Mead had a fair opportunity to object to Helm's discharge or the discharge of his particular debt prior to the bankruptcy court's May 29, 1986, order and that the order was intended to be an adjudication that Mead's claim was discharged.
 
 
 39
 With respect to closure of the estate, Mead's counsel knew or should have known that once the reopened estate was fully administered, it would be closed pursuant to section 350(b) of the Code. The reopened estate was fully administered and properly closed upon disposition of Mead's claim because Mead's was the only claim scheduled in the reopened estate. Once Mead's debt was discharged by virtue of the bankruptcy court's rejection of his substantive objections to the reopening of Helm's estate, nothing remained to be administered.
 
 
 40
 Finally, although Bankruptcy Rule 4004(g) requires that creditors receive notice of discharge, the fact that Mead failed to receive such notice does not alter the fact that the discharge occurred. Once Mead's substantive objections were rejected, nothing obstructed the discharge of Mead's claim. Thus, Mead fails to demonstrate how he was harmed by his failure to receive actual notice of the discharge. Moreover, even when Mead learned of the discharge and closure of Helm's bankruptcy, he did not appeal or seek revocation of the discharge. Instead, he waited approximately two more months and filed a motion to reopen based on already determined issues.
 
 
 41
 For the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 Mead states that the bankruptcy was filed in 1982 but notes that Helm's motion to reopen states it was filed in 1983. In either case, the bankruptcy was converted from a chapter thirteen to a chapter seven proceeding in February 1985
 
 
 [2]
 In April 1983, Helm filed a motion to withdraw from his appointment as Mead's appellate counsel and acknowledged his failure to file the appeal within the requisite sixty days
 
 
 [3]
 The hearing scheduled for April 17, 1986, was adjourned on request by Mead's counsel