ELECTRONIC CITATION: 2006 FED App. 0001P (6th Cir.)
File Name: 06b0001p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: MARKETING AND CREATIVE SOLUTIONS, INC., | ) ) ) |
| Debtor. | ) ) ) |
| _____ | ) ) |
| MARKETING AND CREATIVE SOLUTIONS, INC., | ) ) ) |
| Appellant, | ) ) ) |
| v. | ) ) No. 05-8041 |
| SCRIPPS HOWARD BROADCASTING CO., d/b/a WEWS NEWSCHANNEL5; PLAIN DEALER PUBLISHING CO., d/b/a THE PLAIN DEALER; and WKYC-TV, d/b/a WKYC-TV3, | ) ) ) ) ) |
| Appellees. | ) ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, at Akron.
No. 04-55888.

Submitted: November 9, 2005

Decided and Filed: February 15, 2006

Before: AUG, LATTA, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ON BRIEF:** Erik M. Jones, MENTZER AND MYGRANT LTD, Akron, Ohio, for Appellant. Michael Hazelwood, HAZELWOOD & KASLE, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

JOSEPH M. SCOTT, JR., Bankruptcy Appellate Panel Judge. Involuntary debtor, Marketing and Creative Solutions, Inc. ("MACS"), appeals the bankruptcy court order granting chapter 7 relief to the petitioning creditors, Scripps Howard Broadcasting Co., d/b/a WEWS NewsChannel5 ("WEWS"); Plain Dealer Publishing Co., d/b/a The Plain Dealer ("PDP"); and WKYC-TV, Inc., d/b/a, WKYC-TV3 ("WKYC") (collectively, "Petitioning Creditors").

## I. ISSUE ON APPEAL

The issue presented is whether the claims of Petitioning Creditors are subject to bona fide disputes.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. An order dismissing an involuntary petition is a final order that may be appealed by right under 28 U.S.C. § 158(a)(1), *Nat'l City Bank v. Troutman Enters. (In re Troutman Enters.)*, 253 B.R. 8, 10 (B.A.P. 6th Cir. 2000) (citing *Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960 (B.A.P. 6th Cir. 1998)). Conversely, an order granting involuntary bankruptcy relief is a final order. *See Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313 (9th Cir. 1983).

In granting the relief sought in an involuntary petition, the bankruptcy court must consider the factual as well as legal issues. Findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013; Fed R. Civ. P. 52. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re*

*Mathews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)); *see United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S. Ct. 525 (1948). Conclusions of law are reviewed de novo. *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 857 (B.A.P. 6th Cir. 1997); *Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 98 (B.A.P. 6th Cir. 1997). Furthermore, a bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo. *In re Troutman Enters.*, 253 B.R. at 10. De novo review means that the issue is decided as if it had not been heard before. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996). No deference is given to the trial court's conclusions of law. *In re Eastown Auto Co.*, 215 B.R. 960 (citing *Razavi v. Comm'r*, 74 F.3d 125 (6th Cir. 1996)).

## III. FACTS

MACS is a corporation that ceased doing business on June 30, 2004. Until then, MACS was advertising agent for various Spitzer Auto Stores ("Spitzer"), whereby it created, designed, and placed print and television broadcast advertising for Spitzer. On October 28, 2004, WEWS, PDP, and WKYC filed an involuntary petition for relief under chapter 7 of the United States Bankruptcy Code against MACS. They listed the following claims from advertising accounts: WEWS in the amount of $43,284.25; PDP in the amount of $113,319.38; and WKYC in the amount of $12,962.50. On November 23, 2004, MACS answered that the claims were subject to a bona fide dispute and were barred by the statute of frauds.

After a little over three months for discovery, on March 2, 2005, the bankruptcy court conducted an evidentiary hearing. On May 16, 2005, it entered Order Granting Involuntary Petition for Chapter 7 Relief, which sets out the court's findings of fact and conclusions of law, and Judgment Granting Chapter 7 Relief. The court made the following findings of fact based upon the stipulation of the parties and the testimony of the witnesses:

1. MACS is a for-profit corporation organized under Ohio law in April 1993 and operated as an advertizing agency, with its business office at 122 Western Ave., Akron, Ohio. (Stip. ¶ 2, 3.)

2. Stuart Moss is the statutory agent for MACS and was its president through June 30, 2004, at which point the company ceased doing business. (Stip. ¶ 4, 12.)

3. MACS was an advertisement agent for various Spitzer Auto Stores ("Spitzer") through June 30, 2004, whereby it created, designed, and placed both print and television broadcast advertising for Spitzer. (Stip. ¶ 9, 10.)

4. The Petitioning Creditors all have business offices in Cleveland, Ohio and are all owners and operators of printing or television broadcast media in the Cleveland, Ohio market. (Stip. ¶ 5-8.)

5. All Petitioning Creditors either aired Spitzer television advertisements or carried Spitzer print advertisements that were placed with the individual creditor by MACS. (Stip. ¶ 11.)

6. MACS was the advertising agency of record for Spitzer and the party with whom WEWS interacted for the purchase and payment of Spitzer television advertisements. Ms. Willis stated that WEWS did not have a contract signed by MACS, and that until MACS closed its operations in June 2004, the conduct between the parties was such that MACS paid the invoices billed to it for television advertisements MACS had placed for Spitzer. (Pet. Ex. 1; testimony of Terri Willis, WEWS credit manager.)

7. On July 31, 2003, MACS applied for credit with PDP. (Stip. ¶ 14.) Carol Moss, Treasurer of MACS, signed the application acknowledging that MACS would receive the billing for and be responsible for the payment of print advertisements MACS

placed with PDP. (Stip. Ex. B.) Mr. Moss issued a memo to PDP that same day affirming MACS's obligation to pay PDP for Spitzer advertisements. (Pet. Ex. 2.)

8. PDP and MACS operated in the manner prescribed by the credit agreement and Mr. Moss's memo, and until May 2004, MACS paid PDP in response to its invoices for Spitzer print advertisements. (Testimony of Cheryl Stewart, credit representative for PDP.)

9. On September 10, 2003, Carrie Samolenki, MAC[S]'s receptionist, signed a written contract on behalf of MACS with PDP for print advertisement rates. (Pet. Ex. 3.) This contract served as the basis for the rates PDP charged MACS for subsequent print advertisements MACS placed for Spitzer, for which MACS paid PDP. Ms. Samolenki was not an officer of MACS.

10. There was no written contract between MACS and WKYC. WKYC regularly billed MACS for Spitzer television advertisements and MACS regularly paid until June, 2004. The dealings between MACS and WKYC were consistent with how the industry typically operates. WKYC did attempt to get advertising agencies to sign contracts making them expressly liable for the advertisements they placed, but there is not always a contract between the agency and the media provider. (Testimony of Scott Andriani, business manager for WKYC.)

11. On September 20, 2004 Stuart Moss directed a letter to WKYC, where he acknowledged outstanding payment obligations MACS owed to WKYC for advertisements placed for Spitzer. (Stip. Ex. A.)

12. On July 12, 2004, Spitzer paid MACS $112,210.98 (check #13086) for two invoices related to television advertisements MACS placed with WEWS and WKYC. The invoices totaled $75,258.00. (Stip. ¶ 15, 16, Stip. Ex. D-F.) MACS did not pay

5

WEWS or WKYC for either invoice for which it received payment from Spitzer. (Stip. ¶ 16.)

13.    The involuntary petition lists WEWS, PDP, and WKYC as holding claims in the amount of $43,284.25, $113,319.38, and $12,962.50 respectively.

App. of Appellant, 22-24.

Based upon these factual findings, the court concluded that Petitioning Creditors had met the burden of proving that their claims were not contingent as to liability nor the subject of bona fide disputes. In reaching this conclusion, the court determined that even in the absence of signed contracts with Petitioning Creditors, MACS could be held primarily liable for invoices arising from advertisements placed on behalf of Spitzer under an exception to general agency principles because it had indicated an intention to contract for itself. *See Soberay Mach. & Equip. Co. v. MFR Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999). MACS' intention to contract for itself was manifested by the custom and usage of the industry and the course of dealing between the parties. In addition, the parties had stipulated that Spitzer paid MACS $112,210.98 for invoices from WEWS and WKYC, which money MACS failed to remit to the parties who had submitted those invoices. Finally, the court noted that the amounts of Petitioning Creditors' claims were sufficient to meet the statutory threshold of $12,300 required by Bankruptcy Code § 303(b) for petitioning creditors to commence an involuntary bankruptcy case.

On May 24, 2005, MACS timely filed a notice of appeal.

### IV. DISCUSSION

Under 11 U.S.C. § 303(b)(1), an involuntary chapter 7 or chapter 11 bankruptcy case is commenced upon the filing of a petition for relief:

6

> by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1) (pre-BAPCPA) (referring to Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which became effective on October 17, 2005). If there are fewer than twelve holders of unsecured debt, then one qualified entity may commence an involuntary chapter 7 or chapter 11 case. 11 U.S.C. § 303(b)(2) (pre-BAPCPA).

If an involuntary petition is controverted, the court must conduct a trial and shall order relief only if the debtor is generally not paying its debts as they become due, unless the debts are the subject of a bona fide dispute. 11 U.S.C. § 303(h)(1) (pre-BAPCPA).

A claim is subject to a bona fide dispute, "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 965 (B.A.P. 6th 1998) (quoting *In re Lough,* 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)). However, the court is not to weigh the evidence or resolve any genuine issues of fact or law. *Id.* The petitioning creditor must establish a prima facie case that a bona fide dispute does not exist, by a preponderance of the evidence. After the petitioning creditor meets that initial burden of proof, the burden of proof then shifts to the putative debtor to show otherwise. *Id.* at 968.

The only issue raised by MACS on appeal is whether the bankruptcy court erred as a matter of law in determining that the claims of Petitioning Creditors were not subject to bona fide dispute. MACS does not assert that the court's factual findings were erroneous. Most of the findings of fact appear to have been based upon the stipulations of the parties. Moreover, MACS does not assert that the claims were contingent as to liability or that it generally was paying its debts as they became due. Instead, MACS asserts as a matter of law that it is not liable as agent for the obligations of its

7

disclosed principal, and further asserts that the bankruptcy court erred in deciding this disputed issue of law in connection with the involuntary bankruptcy petition.

In deciding whether the claims of the petitioning creditors are subject to a legitimate dispute of law, a bankruptcy court is not prohibited from addressing the legal merits of the alleged dispute, but may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. *See In re Rimell*, 946 F.2d 1363 (8th Cir. 1991). A debtor may not successfully oppose an involuntary petition by merely claiming that a legal dispute exists when in fact the applicable law is well-established and not subject to legitimate dispute. The bankruptcy court is expected to make an inquiry sufficient to determine whether a legitimate question exists about the application of law to the undisputed facts presented. The debtor must have a "legitimate legal or factual basis" to challenge the claim. *Nat'l City Bank v. Troutman Enters. (In re Troutman Enters.)*, 253 B.R. 8, 12 (B.A.P. 6th Cir. 2000).

MACS has identified two potential legal disputes upon which it relies in opposition to the involuntary petition. First, it asserts that its receptionist was without authority to bind it to a contract with PDP. Second, it asserts that it may not be held primarily liable for the obligations of its disclosed principal. Resolution of the contract issue is not necessary because none of the petitioning creditors relies upon the existence of a written contract to establish its claim. The controlling issue is whether under agency law MACS, as agent, may be found primarily liable for advertising placed on behalf of Spitzer, its principal.

Under Ohio's general rules of agency, "an agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes because the third party intended to deal with the principal, not the agent." *Soberay Mach. & Equip. Co. v. MFR Ltd., Inc.*, 181 F.3d 759, 768 (6th Cir. 1999). However, there are two exceptions to this rule that lead to personal liability of the agent: if "he has manifested an intention to bind or contract for himself . . . [or if] the third party's motivation for entering into the

8

contract is based solely and exclusively upon the credit of the agent." *Id.* (quoting *Ohio State Univ. Hosps. v. Evans*, No. CA 00019, 1995 WL 614937 at *3 (Ohio App. 5 Dist. Sept. 21, 1995)).

In the present case, the debtor showed an intention to make itself liable when the president issued a memo acknowledging the debt to PDP and wrote a letter acknowledging the debt to WKYC. The president also signed an application for credit with PDP. The debtor's acts of remitting payment for invoices directly billed to it showed an intention to make itself liable to all three Petitioning Creditors. *See Soberay*, 181 F.3d at 769 (payment of invoices charged to agent is one factor in determining agent's liability.)

Other courts also have found exceptions that allow the agent to be personally liable for the principal's debts. The disclosing of the principal "merely permits an inference to that effect, which may be overcome not only by express language, but by custom, usage and the prior course of dealing between the parties." *Clark Adver. Agency, Inc. v. Avco Broad. Corp.,* 383 N.E.2d 353, 355 (Ind. App. 1978); Restatement Second of Agency § 320. Within the television industry, it is an "established industry custom that television stations hold advertising agencies liable for the purchase of air time unless the television station receives specific notice of nonliability, even though the television station is aware that the advertising agency is acting for a disclosed principal." WUPW *TV-36 v. Direct Results Mktg., Inc.,* 591 N.E.2d. 1345, 1352 (Ohio App. 10 Dist. 1990). The bankruptcy court found evidence of this industry custom. Based on the testimony of the business manager for WKYC, the court found, "The dealings between MACS [the debtor] and WKYC were consistent with how the industry typically operates. WKYC did attempt to get advertising agencies to sign contracts making them expressly liable for advertisements they placed, but there is not always a contract between the agency and the media provider." (Op. 2). Both WEWS and WKYC billed the debtor directly, manifesting an intent to hold it liable and acting consistently with the industry custom.

As noted above, MACS has raised no genuine issues of material fact. The bankruptcy court's findings were based upon the stipulations of the parties and upon testimony of witnesses, none of

which is asserted to be the subject of a legitimate dispute. MACS did not, for example, raise a factual dispute about the custom and usage in the television industry or its prior course of dealing with Petitioning Creditors. Both point to an intention by MACS to be bound for the payment of invoices issued by Petitioning Creditors for advertisements carried on behalf of Spitzer.

Furthermore, MACS does not raise a genuine legal dispute. It does not point to an alternative line of authority, for example, that would support its contention that, notwithstanding the parties' prior course of dealing, it was not liable for payment to Petitioning Creditors. The requirement that the court not resolve legal disputes in connection with a contested involuntary bankruptcy petition does not mean that the bankruptcy court, or we as the reviewing Panel, is prohibited from determining whether there is a legitimate legal dispute. MACS' arguments in the main are addressed to the bankruptcy court's reliance upon cases in which the weight to be accorded certain evidence was at issue. MACS asserts that it was improper for the bankruptcy court in this case to engage in the weighing of evidence. MACS fails completely to address the fact that *it has raised no factual dispute in this case.* It has pointed to no place in the record in which the bankruptcy court actually engaged in the weighing of evidence.

Whether or not the receptionist for MACS had authority to sign a letter of intent is not a legitimate factual or legal dispute because it is not material. None of the claims of Petitioning Creditors relies upon the existence of a written contract. Likewise, whether MACS was an agent for a disclosed principal is not a legitimate factual or legal dispute because it is conceded that MACS was an agent acting for a disclosed principal. MACS fails to address the well-established exceptions to the otherwise general rule that would limit its liability as agent. The bankruptcy court concluded, and we also conclude, that an exception applies in this case such that the court must look to industry usage and custom and the prior course of dealing between the parties to determine whether MACS as agent intended to be primarily liable to Petitioning Creditors. Both custom and usage and prior dealing in this case indicate that MACS did intend to be bound. MACS has raised no legitimate factual or legal dispute concerning its liability to Petitioning Creditors.

10

## V.  CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.