ELECTRONIC CITATION: 2013 FED App.0004P (6th Cir.)
File Name: 13b0004p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:  ROBERT D. UNDERHILL and ) 
BETH UNDERHILL, )
) No. 12-8045
Debtors. )

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio
Case No. 10-10061

Submitted: August 20, 2013

Decided and Filed: September 16, 2013

Before: EMERSON, LLOYD, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** David S. Blessing, THE BLESSING LAW FIRM, Cincinnati, Ohio, for Appellants. Jody Michelle Oster, THE HUNTINGTON NATIONAL BANK, Columbus, Ohio, for Appellee.

1

---

**OPINION**

---

MARCI B. McIVOR, Chief Bankruptcy Appellate Panel Judge. Robert and Beth Underhill ("Debtors") appeal the bankruptcy court's order granting Huntington National Bank's motion to reopen Debtors' bankruptcy case. After Debtors received their discharge, Golf Chic Boutique, LLC, ("Golf Chic, LLC") an LLC in which Debtor Beth Underhill was the sole member, filed a claim for tortious interference against several entities. The lawsuit was settled and $80,000 was awarded to the plaintiff LLC. However, the settlement check was made payable to Debtor Beth Underhill and her attorney, rather than to the LLC. Huntington National Bank discovered that Debtor Beth Underhill had received the settlement proceeds and moved to reopen the Debtors' case so that the proceeds of the settlement could be administered as an asset of the bankruptcy estate. For the reasons that follow, the Panel affirms the bankruptcy court's order granting Huntington National Bank's motion to reopen the Debtors' bankruptcy case. The Panel also remands this matter to the bankruptcy court for a determination as to the value of Debtor Beth Underhill's membership interest in Golf Chic, LLC, based on Golf Chic LLC's recovery on its lawsuit.

**STATEMENT OF ISSUES**

There are two issues on appeal. The first issue is whether the bankruptcy court abused its discretion in granting Huntington National Bank's motion to reopen. The second issue is whether the bankruptcy court erred in ruling that all of the settlement proceeds received by Debtor Beth Underhill, as the sole member of Golf Chic, LLC were property of the Debtors' bankruptcy estate.

2

**JURISDICTION AND STANDARD OF REVIEW**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and none of the parties has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted). An order granting a motion to reopen the bankruptcy case to administer an asset is a final and appealable order, because the determination that the trustee may administer the asset as property of the estate is conclusive on the merits. *See, e.g., Bonner v. Sicherman* (*In re Bonner*), 330 B.R. 880 (B.A.P. 6th Cir. 2005) (table).

A decision on a motion to reopen is within the sound discretion of the bankruptcy court. The reviewing court should not set aside the bankruptcy court's decision, absent an abuse of discretion. *Smyth v. Edamerica, Inc.* (*In re Smyth*), 470 B.R. 459, 461 (B.A.P. 6th Cir. 2012). An abuse of discretion occurs when the bankruptcy court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (citing *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

Determinations as to whether property forms a part of the bankruptcy estate are conclusions of law that are reviewed *de novo*. *Mueller v. Hall* (*In re Parker*), No. 06-8053, 2007 WL 1376081, at *2 (B.A.P. 6th Cir. May 10, 2007) (table). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination."

3

*Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Solutions, Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006). "No deference is given to the trial court's conclusions of law." *Id*.

## FACTS

On January 6, 2010, David R. Underhill and Beth Underhill filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Harold Jarnicki was appointed Chapter 7 Trustee.

On January 26, 2010, the Debtors filed their bankruptcy schedules. On Schedule B, the Debtors listed their 100% interest in a number of businesses including Golf Chic Boutique, LLC.[1] Golf Chic, LLC is not a debtor in bankruptcy. Schedule B states that the Debtors have a 100% ownership and membership interest in Golf Chic, LLC and that Golf Chic, LLC has no value. The Debtors also listed all secured and unsecured claims of Golf Chic, LLC. The Debtors further represented that they held no contingent or unliquidated claims on the petition date. In other words, the Debtors represented that neither they, nor Golf Chic, LLC, owned any causes of action.

Schedule D lists Huntington National Bank ("Creditor Bank") as a creditor holding a claim totaling $25,000, secured by a lien on all of Golf Chic, LLC's property. Debtor Beth Underhill personally guaranteed repayment of the obligations of Golf Chic, LLC to Creditor Bank pursuant to a Commercial Guaranty.

In addition to Creditor Bank's secured claim, it also holds a non-priority unsecured claim in the amount of $105,000, by virtue of a loan and lease made to Underhill Landscaping, Inc.

---

[1] The other interests include: (1) 100% stock in Underhill Landscaping, Inc.; (2) 100% stock in Cincinnati Landscape Design Build Group; and (3) 100% ownership interest in Bud Properties, LLC. All are listed as having zero value.

On April 29, 2010, the Chapter 7 Trustee filed a report of no distribution.

On May 19, 2010, an order was entered discharging the Debtors.

On June 15, 2010, the Debtors' bankruptcy case was closed.

On October 25, 2010, Golf Chic, LLC filed a complaint in the Hamilton County, Ohio Court of Common Pleas against The Ladies Pro Shop, Inc., Golf Gear, Inc., and Andrea Walch ("Hamilton County Defendants") (Case No. A1009767) ("Hamilton County Action"). The Debtors were not named as plaintiffs in the Hamilton County Action. Golf Chic, LLC claimed that in 2009 the Hamilton County Defendants "embarked on an unlawful plan and conduct to disrupt price competition from Golf-Chic by trying to drive Golf-Chic out of business." Docket No. 75, Complaint, Exh. D, p. 2, ¶ 7. In the Hamilton County Action, Golf Chic, LLC described how the Hamilton County Defendants attempted to disrupt Golf Chic, LLC's business by contacting suppliers and vendors by e-mail and phone asking those suppliers and vendors to cease selling products to Golf Chic, LLC, resulting in lost income and business. As a result of the Hamilton County Defendant's actions, Golf Chic, LLC requested an award of damages exceeding $25,000. In connection with the Hamilton County Action, Debtor Beth Underhill and Hamilton County Defendant, Andrea Walch, testified under oath in a deposition.

On February 17, 2012, the Hamilton County Defendants issued a settlement check in the Hamilton County Action for the sum of $80,000, made payable to "The Blessing Law Firm Trust Account." *Id*. at Exh. E. Copies of the settlement check obtained during discovery reflect that the proceeds were distributed on February 28, 2012. Debtor Beth Underhill individually received $44,985, and William H. Blessing Office Account received the sum of $35,015.

On February 23, 2012, the Debtors and Golf Chic, LLC executed a "Full and Final Release," releasing the Hamilton County Defendants and Old Dominion Insurance Company from claims

5

resulting from any and all facts set forth in the Hamilton County Action. The Full and Final Release was signed by the Debtors.

On February 28, 2012, Creditor Bank learned of the settlement entered into between Golf Chic, LLC and the Hamilton County Defendants. Creditor Bank filed an action in Franklin County Court of Common Pleas against the Debtors, The Blessing Law Firm and William H. Blessing, and others, requesting a turnover of the settlement proceeds.

On July 25, 2012, Creditor Bank filed a motion to reopen the Debtors' bankruptcy case for cause in order to administer undisclosed assets. On August 30, 2012, the Debtors filed an objection to the Creditor Bank's motion to reopen.

On October 1, 2012, the bankruptcy court held a hearing on Creditor Bank's motion to reopen. At the conclusion of the hearing, the bankruptcy court granted Creditor Bank's motion to reopen.

On October 10, 2012, the bankruptcy court entered an order in accordance with its ruling. Relying on evidence submitted by the parties from the Hamilton County Action, including affidavits and deposition testimony, the bankruptcy court held that Creditor Bank

> met its burden of demonstrating that the Claim was sufficiently rooted in the Debtors' pre-bankruptcy past so as to constitute property of the estate and that the $80,000 settlement funds paid by or on behalf of the [Hamilton County] Defendants to settle the Claim and the Hamilton County Action also constitute property of the estate. 11 U.S.C. § 541. *Mueller v. Hall* (*In re Parker*), 2007 Bankr. LEXIS 1523, 2007 WL 1376081 (B.A.P. 6th Cir. 2007). . . . [T]he testimony of Debtor Beth Underhill in addition to her Affidavit as well as the testimony of the Defendants in the Hamilton County Action make clear that events relating or giving rise to the Claim occurred as early as April of 2009, continued later into 2009 and in 2010 subsequent to the filing of the petition herein.

6

(Docket No. 87, p. 4).

On October 24, 2012, the Debtors filed a timely appeal of the bankruptcy court's order granting Creditor Bank's motion to reopen the Debtors' bankruptcy estate to administer the settlement proceeds.

## DISCUSSION

There are two issues on appeal. The first issue is whether the bankruptcy court abused its discretion in granting Creditor Bank's motion to reopen. The second issue is whether the bankruptcy court erred in ruling that all of the settlement proceeds received by Beth Underhill in her capacity as the sole member of Golf Chic, LLC are property of the Debtors' bankruptcy estate.

I.      The bankruptcy court did not abuse its discretion in granting Creditor Bank's motion to reopen.

Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010. Section 350 "confers upon the bankruptcy court broad discretion in determining whether to reopen a case and its decision to grant or deny a motion to reopen is binding absent a clear abuse of discretion." *Mead v. Helm*, No. 88-105, 1989 WL 292, at *3 (6th Cir. Jan. 4, 1989) (table) (citing *Rosinski v. Boyd* (*In re Rosinski*), 759 F.2d 539, 540-41 (6th Cir. 1985)). Motions to reopen are decided on a case-by-case basis after the bankruptcy court weighs the equities of the case. *In re Jenkins*, 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005). "[A]lthough a motion to reopen is addressed to the sound discretion of the bankruptcy court, 'the court has the duty to reopen an estate whenever prima facie proof is made that it has not been fully administered.'" *Lopez v. Specialty Rests. Corp.* (*In re Lopez*), 283 B.R. 22, 27 (B.A.P. 9th Cir. 2002) (citing *Kozman v. Herzig* (*In re Herzig*), 96 BR 264, 266 (B.A.P. 9th Cir. 1989)). A bankruptcy court abuses its discretion if it bases its ruling on an erroneous rule of law or where the Panel finds that the trial court

7

has committed a clear error of judgment in the conclusion it reached. *Lopez*, 283 B.R. at 26. A court also abuses its discretion if it denies a motion to reopen where "assets of such probability, administrability and substance . . . appear to exist as to make it unreasonable under all the circumstances for the court not to deal with them." *Herzig*, 96 B.R. at 266.

In this appeal, Creditor Bank filed a motion to reopen the Debtors' bankruptcy case in order to administer undisclosed assets consisting of settlement proceeds it claims are part of the Debtors' bankruptcy estate. The bankruptcy court did not abuse its discretion in reopening the bankruptcy case because Creditor Bank established a prima facie claim that Debtor Beth Underhill received $44,985 from the $80,000 settlement of a lawsuit filed by an LLC in which she was the sole member. The existence of settlement proceeds from a claim held by the LLC, an entity the Debtors owned entirely, is sufficient evidence of an asset to grant a motion to reopen.

The Debtors do not seriously challenge the bankruptcy court's broad authority to reopen the case. Instead the Debtors argue that the court wrongly concluded that the check received by Debtor Beth Underhill was property of the bankruptcy estate. The Debtors raise two arguments as to why the settlement proceeds are not property of their bankruptcy estate. The Debtors' first argument is that because the settlement proceeds were received after the Debtors received a discharge, the proceeds are not property of the estate. The Debtors' second argument is that even if a cause of action against the Hamilton County Defendants existed at the time the Debtors filed for bankruptcy, that cause of action was abandoned by the Trustee when the Debtors' bankruptcy case was closed. The Panel will address each of these arguments below.

A.  <u>The check received by Debtor Beth Underhill post-petition was evidence of an asset to be administered by the bankruptcy estate</u>.

The Debtors first argue that the portion of the settlement paid to Debtor Beth Underhill is not property of the estate because it was paid to Debtor Beth Underhill long after the Debtors' bankruptcy case was closed.

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The purpose of this broad definition is to " 'bring anything of value that the debtors have into the [bankruptcy] estate.' " *In re Webb*, BAP No. 11-8016, 2012 WL 2329051, at *11 (B.A.P. 6th Cir. Apr. 9, 2012) (table) (citing *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321, 330 (B.A.P. 6th Cir. 2007)). It is well settled that "interests of the debtor in property" include causes of action. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S. Ct. 2309, 2314 (1983). Moreover, § 541(a) "is not restricted by state law concepts such as when a cause of action ripens or a statute of limitations begins to run, and 'property of the estate' may include claims that were inchoate on the petition date." *Winick & Rich, P.C. v. Strada Design Assocs., Inc.* (*In re Strada Design Assocs., Inc.*), 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005).

The seminal case discussing the scope of "property of the estate" is the Supreme Court's decision in *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511 (1966). In *Segal*, the Supreme Court determined that a loss-carryback refund claim is property of the estate because even though the refund could not be claimed from the Government until a future time, it was "sufficiently rooted in the pre-bankruptcy past" that it should be regarded as property of the bankruptcy estate.[2] *Segal*, 382 U.S. at 379, 86 S. Ct. at 515. Since *Segal* was decided, courts have consistently held that causes of action that are sufficiently rooted in the debtor's pre-bankruptcy conduct are property of the estate under § 541. *See Mueller v. Hall* (*In re Parker*), No. 06-8053, 2007 WL 1376081, at *7 (B.A.P. 6th Cir. May 10, 2007) (table) (holding that a malpractice claim, that the debtor listed in the schedules and caused debtor to file for bankruptcy is property of the estate); *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000) (debtor's asbestos injury claim is property of the estate where all allegedly wrongful conduct that gave rise to the claim occurred prepetition).

Applying the *Segal* test to the evidence in the record, the Panel finds that the Debtors' interest in Golf Chic, LLC included a contingent, unliquidated value for the LLC's claim for tortious interference. The claim had its roots in prebankruptcy and pre-abandonment conduct such that the Debtors' interest in the LLC included some or all of the settlement proceeds. This property

---

[2] Although *Segal* was decided under § 70a(5) of the Bankruptcy Act rather than the Bankruptcy Code, courts follow the reasoning and adhere to the test enunciated in *Segal* when determining whether a claim is property of the estate. *See Parker*, 2007 WL 1376081, at *7.

constitutes property of the Debtors' estate, but the value must be determined after payment of all claims senior in priority to the Debtors' membership interest. The evidence submitted by the parties consisting of the deposition testimony of Debtor Beth Underhill, the deposition testimony of the Hamilton County Defendant Andrea Walch, affidavits, email correspondence, and pleadings from the Hamilton County Action all support the conclusion reached by the bankruptcy court that the events giving rise to Golf Chic, LLC's claim for tortious interference began in 2009 and culminated in 2010 when the Hamilton County Defendants terminated their business relationship with Golf Chic, LLC. Since Debtor Beth Underhill was the sole member of Golf Chic, LLC, her membership interest potentially had value on the date she filed for bankruptcy and certainly before abandonment because Golf Chic, LLC had a cause of action against the Hamilton County Defendants that was undisclosed. Although the settlement of Golf Chic, LLC's cause of action did not occur until after Debtors' case was closed, the settlement related to a prepetition cause of action held by the LLC, and Debtor Beth Underhill received payment because of her prepetition interest in Golf Chic, LLC. The bankruptcy court's conclusion that the settlement proceeds were rooted in prepetition activities is correct as a matter of law.

The Panel affirms the bankruptcy court's conclusion that the settlement proceeds received by Debtor Beth Underhill post-discharge were sufficiently rooted in the Debtors' pre-bankruptcy past to require administration of the net settlement proceeds by the bankruptcy estate.

> B.  Debtor failed to disclose that Golf Chic, LLC had a cause of action against the Hamilton County Defendants. Therefore, the cause of action was not abandoned when the bankruptcy estate was closed.

The Debtors' second argument is that even if the settlement proceeds from the Hamilton County Action would have been property of the bankruptcy estate, the cause of action is not an asset because it was abandoned when the case was closed. Reopening a bankruptcy case to administer an asset may only occur when there are assets that are not known to the trustee at the time the case was closed. *Collier on Bankruptcy,* ¶ 350.03[1] (16th ed rev. 2012). Section 554 addresses this point and states in relevant part that:

> (c) . . . *[A]ny property scheduled* under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is

10

> abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) . . . [P]roperty of the estate that is not abandoned under this section and that is not administered in the case *remains property of the estate*.

11 U.S.C. § 554 (emphasis added). Therefore, an asset or property of the estate that has been concealed or not scheduled by the debtor will not be deemed to have been abandoned by the trustee and belongs to the bankruptcy estate. The bankruptcy court record shows that the Debtors only disclosed their 100% membership interest in Golf Chic, LLC and represented in their schedules that they possessed no contingent or unliquidated claims. Under § 554 an unscheduled asset is not automatically abandoned. The tort claim held by Golf Chic, LLC was not abandoned when the Debtors' trustee abandoned the membership interest to the Debtors because the tort claim was known to Debtor Beth Underhill and affected the value of her membership interest. Placing a value of zero on the LLC membership interest with knowledge of the tort claim and the failure to list such claim constituted a failure to disclose the asset and warrants reopening and a determination by the bankruptcy court of the value of the Debtors' interest in the LLC.

II.    Valuation of Debtor Beth Underhill's membership interest in Golf Chic, LLC.

While the bankruptcy court correctly concluded that Creditor Bank's motion to reopen should be granted, it is unclear from the record what portion of the settlement proceeds from Golf Chic, LLC's lawsuit belongs to creditors of Golf Chic, LLC, and what portion belongs to creditors of Beth and Robert Underhill. Some of the proceeds of the settlement are an asset of the bankruptcy estate only because Debtor Beth Underhill is the sole member of Golf Chic, LLC. On the date the Debtors filed for bankruptcy, Golf Chic, LLC had a cause of action against the Hamilton County Defendants. Debtor Beth Underhill stated that her membership interest in Golf Chic, LLC had a value of zero, but that statement was inaccurate because her membership interest potentially had value if Golf Chic, LLC recovered on its cause of action. Once Golf Chic, LLC recovered on its cause of action, the unresolved issue is the value of Debtor Beth Underhill's membership interest in Golf Chic, LLC after Golf Chic, LLC received the settlement.

11

Debtor Beth Underhill's interest in the settlement proceeds obtained by Golf Chic, LLC is defined by state law. Pursuant to Ohio law, a person owning an interest in a limited liability company is a member of that limited liability company. Ohio Rev. Code §1705.01(G). This membership interest confers upon the member a right to a "share of the profits and losses of [the] limited liability company and the right to receive distributions from that company." Ohio Rev. Code §1705.01(H). A person's membership interest in a limited liability company is personal property. Ohio Rev. Code §1705.17. "A 'membership interest' in a limited liability company, however, does not confer upon the 'member' any specific interest in company property, whether personal property or real property. Such property is, instead, held and owed [sic] solely by the company." *In re Liber*, No. 08-37046, 2012 WL 1835164, at *4 (Bankr. N.D. Ohio May 18, 2012). Therefore, if the company is dissolved the assets of Golf Chic, LLC are retained for the benefit of creditors of the company, not for the benefit of its members. Ohio Rev. Code § 1705.46. "Under this principle, membership interests in the company only have value to the extent assets exceed the liabilities." *In re Saunier*, No. 11-60997, 2012 WL 5898601, at *1 (Bankr. N.D. Ohio Nov. 20, 2012); *see also*, *In re Hopkins*, No. DG 10-13592, 2012 WL 423916 (Bankr. W.D. Mich. Feb. 2, 2012).

Under Ohio law, the settlement proceeds of the Hamilton County Action should have been paid to Golf Chic, LLC. Debtor Beth Underhill, in her capacity as a member of Golf Chic, LLC was required to pay creditors of Golf Chic, LLC before she made a distribution to herself on account of her membership interest. Instead, the settlement proceeds were distributed directly to the attorney who represented Golf Chic, LLC, in the amount of $35,015, and to Debtor Beth Underhill, in the amount of $44,985, leaving Creditor Bank with no remedy but to reopen the Debtors' bankruptcy case to seek payment on their claim against Golf Chic, LLC.

If Debtor Beth Underhill had listed Golf Chic, LLC's cause of action against the Hamilton County Defendants on her bankruptcy schedules, the cause of action would have been litigated for the benefit of the bankruptcy estate. Once the litigation was settled, Beth Underhill's membership interest would have been $80,000, less amounts owed to creditors of Golf Chic, LLC. The creditors of Golf Chic, LLC (including the Blessing Law Firm) would have been paid, and the balance of the settlement proceeds would belong to the Debtors' bankruptcy estate for distribution to Debtors' creditors.

12

Now that this case is reopened, the bankruptcy court must determine what portion of the settlement proceeds belongs to creditors of Golf Chic, LLC pursuant to Ohio law. Those proceeds are recoverable by creditors of Golf Chic, LLC. Under Ohio law, Debtor Beth Underhill's membership interest has value to *her* bankruptcy estate, but only to the extent that the proceeds of the settlement exceed creditor claims against Golf Chic, LLC. Therefore, the Panel is remanding this matter back to the bankruptcy court so that the bankruptcy court can determine how the settlement proceeds of the Hamilton County Action should have been distributed under Ohio state law.

**CONCLUSION**

For the foregoing reasons, the Panel AFFIRMS the bankruptcy court's order granting Creditor Bank's motion to reopen the Debtors' bankruptcy case. The Panel also REMANDS this matter to the bankruptcy court for further findings as to what portion of the settlement proceeds should have been paid to creditors of Golf Chic, LLC and what portion of the proceeds should be paid into Debtor Beth Underhill's bankruptcy estate on account of her membership interest in Golf Chic, LLC.