COOK, Circuit Judge.
Robert and Beth Underhill filed for Chapter 7 bankruptcy, listing their 100% ownership interest in Golf Chic Boutique, LLC as an asset. After the bankruptcy court granted the Underhills a discharge and closed the case, Golf Chic successfully sued a competitor for tortious interference, garnering a settlement payment to Beth. Alleging that the settlement proceeds constituted property of the bankruptcy estate, creditor Huntington National Bank moved the bankruptcy court to reopen the Under-hills’ bankruptcy to recoup those funds for the estate’s creditors. The court granted the motion, the Bankruptcy Appellate Panel (BAP) affirmed, and the Underhills appeal. Because Golf Chic’s cause of action became a property interest after the Un-derhills filed for bankruptcy, it cannot qualify as bankruptcy property, and we therefore reverse.
*481 I.
The Underhills filed their personal bankruptcy petition on January 6, 2010, representing that neither they nor Golf Chic had any assets in the nature of unliq-uidated claims. Three months after the bankruptcy court closed its case, a major supplier canceled its contract with Golf Chic, leading to Golf Chic’s demise. The Underhills discovered that a competitor, Ladies Pro Shop (“Ladies Pro”), had complained to the supplier about Golf Chic’s prices since 2009, culminating with emails in April and September 2010 requesting that the supplier sever ties with Golf Chic. Golf Chic then sued various defendants associated with Ladies Pro for tortious-interference-with-contract and disparage-' ment. The parties settled, with Golf Chic agreeing to dismiss the case in exchange for $80,000. The defendants sent a check to Golf Chic’s lawyers, who then forwarded a portion of the proceeds to Beth Under-hill.
Upon learning of the settlement, Huntington moved the bankruptcy court to reopen the Underhills’ bankruptcy to allow the trustee to administer the proceeds to creditors. Acknowledging that the proceeds belonged to the estate only if the cause of action constituted a property interest before the Underhills filed for bankruptcy, and pointing to the Underhills’ complaint against Ladies Pro, Huntington asserted that the cause of action “arose in 2009” prior to the bankruptcy petition. The Underhills countered that no cause of action existed until Ladies Pro’s threats caused Golf Chic’s supplier to cancel their contract in September 2010.
Despite the fact that the harm occurred post-petition, the bankruptcy court concluded that the cause of action was “sufficiently rooted in the [Underhills’] pre-bankruptcy past” because the record “ma[d]e clear that events relating or giving rise to the Claim occurred as early as April of 2009.” (App. Vol. IV at 934.) The court relied on deposition testimony — taken in connection with the underlying lawsuit — that prior to the filing of the petition Ladies Pro “was complaining” to the supplier about Golf Chic’s discounted selling. (Id. at 933.) Specifically, a Ladies Pro representative testified that she “may have talked to” the supplier in 2009 after learning about Golf Chic’s pricing from various mutual customers, including one who acted as a “mole” by forwarding Golf Chic’s email advertisements. (Id.; App. Vol. I at 213-14.) And Beth Underhill testified that she learned about Ladies Pro’s complaints in April 2009. (App. Vol. Ill at 725.)
The Underhills appealed to the BAP, which affirmed the bankruptcy court’s judgment because the record reflected that “the events giving rise to Golf Chief ]’s claim for tortious interference began in 2009.” (App. Vol. V at 1065.) In doing so, the BAP also rejected the Underhills’ new argument that the trustee abandoned the cause of action by failing to administer it before the close of the case. ' (Id.) This appeal followed.
II.
The Underhills contend that the cause of action cannot qualify as bankruptcy property because Ladies Pro caused Golf Chic no pre-petition injury.[1] “We review a *482 bankruptcy court’s ... conclusions of law de novo.” In re Zingale, 693 F.3d 704, 707 (6th Cir.2012).
Pre-petition causes of action belong to the bankruptcy estate and post-petition actions belong to the debtor. Specifically, the debtor’s filing of a bankruptcy petition commences a voluntary bankruptcy case, 11 U.S.C. § 301, creating a bankruptcy estate consisting of “legal or equitable interests of the debtor in property as of the commencement of the case,” id. § 541(a)(1). State substantive law determines the “nature and extent” of causes of action, see Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 461 (6th Cir.2013), but federal bankruptcy law dictates when that property interest becomes property of the estate for purposes of § 541, see In re Terwilliger’s Catering Plus, Inc., 911 F.2d 1168, 1172 (6th Cir.1990).
The Underhills’ contention finds considerable support in Tyler. That case explained that most courts apply Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) — which defined pre-petition assets under a previous version of the Code as those “sufficiently rooted in the pre-bankruptcy past” of the debtor — to the current version of the Code. Tyler, 736 F.3d at 461-62 (collecting cases). And we recognized that “[p]re-petition conduct or facts alone will not ‘root’ a claim in the past; there must be a pre-petition violation.” Id. at 462. That is, a cause of action qualifies as bankruptcy estate property only if the claimant suffered a pre-petition injury. See id.; In re Witko, 374 F.3d 1040, 1044 (11th Cir.2004) (concluding that legal-malpractice claim belonged to the debtor because he “did not suffer any harm from the alleged legal malpractice prior to or contemporaneous with filing his bankruptcy petition”); Cook v. Baca, 512 Fed.Appx. 810, 820 (10th Cir.2013) (“Though ... the alleged conspiracies involved property that was the subject of dispute between the parties prior to the bankruptcy filing, the alleged constitutional injuries did not exist prior to the filing.”); In re Pettibone Corp., 90 B.R. 918, 932 (Bankr.N.D.Ill.1988) (“[I]f a tort claimant whose employer had purchased a defective product pre-petition is exposed only post-petition to that product and sustains bodily injury only after filing of the manufacturer’s bankruptcy, the claimant’s bankruptcy claim arises post-petition.”).
Here, the record lacks evidence of a pre-petition violation or injury. Though the bankruptcy court pointed to evidence that Ladies Pro monitored Golf Chic’s prices and complained to the supplier pre-petition, tortious-interferenee-with-contract requires more: a “wrongdoer’s intentional procurement of [a] contract’s breach.” Fred Siegel Co. v. Arter & Hadden, 85 Ohio St.3d 171, 707 N.E.2d 853, 858 (1999). Ladies Pro first interfered with Golf Chic’s supply source .in its April 2010 cease-sales demand — after the bankruptcy petition. (App. Vol. II at 378.)[2] Meanwhile, Ladies *483 Pro’s pre-petition complaints did not constitute “disparagement,” because that tort targets false statements. See A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Counsel, Nos. 92AP-1540 & 92AP-1541, 1993 WL 387179, at *14 (Ohio Ct.App. Sept. 30, 1993); Restatement (Second) of Torts § 623A; O.R.C. § 4165.02(A)(10) and (12). Nothing-in the record intimates that Ladies Pro made any pre-petition false statements against Golf Chic.
In search of a pre-petition violation, Huntington redirects our attention to Golf Chic’s underlying complaint against Ladies Pro, which alleged business interference beginning “[i]n or about 2009” and continuing “[f]rom 2009 forward.” (App. Vol. I at 114-15.) Yet, because this matter proceeded to an evidentiary hearing, these vague allegations no longer suffice. The parties had the opportunity to document Ladies Pro’s alleged misconduct, and the pre-petition price complaints identified by the parties fall well short of intentional procurement of breach-of-contract.
Still, Huntington contends that Segal supports treating the claims against Ladies Pro as pre-petition property. That ease held that a debtor’s loss-carryback tax refund claim belonged to the estate even though the debtor could not claim it until the end of the year (posLpetition). See 382 U.S. at 380, 86 S.Ct. 511. But the Court explained that the “two key elements pointing toward realization of a refund existed at the time these bankruptcy petitions were filed: taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss.” Id.; see also Witko, 374 F.3d at 1043 (noting that in Segal “the predicates for receiving the refunds ... occurred pre-petition”). No similar pre-petition predicates established Golf Chic’s tort claims here. The business interference occurred post-petition.
Offering a final counter-argument, Huntington cites lower-court cases for the proposition that the “the accrual date does not control whether a cause of action constitutes property of the estate.” None of these cases, however, concerned a cause of action unsupported by a pre-petition legal injury. See, e.g., In re Parker, 368 B.R. 86, 2007 WL 1376081, at *7-8 (6th Cir. BAP 2007) (table) (legal malpractice claim, where the allegedly deficient representation resulted in a pre-petition judgment against the claimant); In re Richards, 249 B.R. 859, 861 (Bankr.E.D.Mich.2000) (medical-malpractice claim where “both the onset of the debtor’s disease and a greater portion of its progress occurred before he filed his [bankruptcy] petition”).
III.
We REVERSE the judgment of the BAP and REMAND for proceedings consistent with this opinion.

. The Underhills argue for the first time on appeal that the bankruptcy court lacked jurisdiction because Huntington filed its reopening motion too late. But no deadlines apply to motions to administer assets. See 11 U.S.C. § 350(b). Though the Underhills characterize Huntington's motion as seeking revocation, which typically must occur within a year of the discharge, see 11 U.S.C. § 727(e)(2), Huntington moved only to administer the settlement proceeds from the tort suit. (See App. Vol. I at 91-97.)
*482 The Underhills also assert that the trustee abandoned any interest in the Golf Chic/Ladies Pro litigation by not administering it before the close of the case. Yet, because the Underhills failed to include these claims in their schedule of assets, the trustee could not abandon them. See 11 U.S.C. § 554(c); In re Fossey, 119 B.R. 268, 272 (D.Utah 1990).

. Huntington contends that the Underhills forfeited this argument because they failed to ''link[] the termination of the supplier relationship to the right to file the [tort] action” in the bankruptcy court. Not so. Their counsel argued during the hearing that the debtors "never had any claim at any point the bankruptcy was open and ... the damage to Golf Chic ... is the September 30th termination [of the contract]. Before that Golf Chic never had a claim that they could allege....” (App. Vol. IV at 967.) Regardless, their brief to the bankruptcy court stressed that their legal claims against Ladies Pro arose post-petition. (App. Vol. VI at 1076-77.)