IN RE: Thomas M. BOLON, Jr., Debtor.

David M. Whittaker, Chapter 7 Trustee, Plaintiff,

v.

Groves Venture, LLC, et al., Defendants.

Case No. 11–61613

Adv. Pro. No. 13–2405

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

Signed September 30, 2015

Kenneth C. Johnson, Bricker & Eckler, LLP, David M. Whittaker, Columbus, OH, for Plaintiff.

Christal Caudill, Powell, OH, Richard K. Stovall, Myron N. Terlecky, Columbus, OH, for Defendants.

## MEMORANDUM OPINION GRANTING DEFENDANTS' (A) MOTION TO DISMISS COMPLAINT *(DOC. 16) AND (B) MOTION TO DISMISS CROSS-CLAIM (DOC. 34)*

John E. Hoffman, Jr., United States Bankruptcy Judge

### I. Introduction

In this adversary proceeding, the Chapter 7 trustees of two separate bankruptcy estates seek to avoid the same alleged fraudulent transfer of a membership interest in a limited liability company and to recover the value of the transferred interest from the defendants. One trustee included these requests for relief in his complaint commencing the adversary proceeding (the "Complaint") (Adv.Doc. 1),

while the other trustee made them in her cross-claim (the "Cross-claim") (Adv.Doc. 27). The trustee who filed the Complaint alleged that the membership interest was property of the debtor whose estate he serves, but the allegation is contrary to the undisputed facts and the law. And the trustee who filed the Cross-claim likewise did not allege facts sufficient to raise a plausible claim for avoidance of the transfer. Because both trustees have failed to state a claim upon which relief can be granted, the Court grants the defendants' motions to dismiss the Complaint and the Crossclaim.

## II. Jurisdiction and Constitutional Authority

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(H).

■ Because none of the defendants filed a proof of claim, the Court might have lacked the authority under Article III of the Constitution to enter final judgment on the trustees' fraudulent transfer claims absent the consent of the parties. *See, e.g., Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 562–63 (9th Cir.2012) (holding that bankruptcy courts lack the constitutional authority after *Stern v. Marshall*, — U.S. —, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), to enter final judgment on fraudulent transfer claims against defendants that have not filed proofs of claim), *aff'd*, — U.S. —, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014). *Cf. Onkyo Europe Elecs. GMBH v. Global Technovations Inc. (In re Global Technovations Inc.)*, 694 F.3d 705, 722 (6th Cir.2012) ("In our case, Onkyo filed a proof of claim against GTI's bankruptcy estate.... It is crystal clear that the bankruptcy court had constitution-

al jurisdiction under *Stern* to adjudicate whether the sale of GTI was a fraudulent transfer, because it was not possible ... to rule on [Onkyo's] proof of claim without first resolving the fraudulent-transfer issue.") (internal quotation marks omitted). But "Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S.Ct. 1932, 1939, 191 L.Ed.2d 911 (2015). Here, the parties have consented to the Court's entry of final judgment. The Court accordingly has constitutional authority to enter final judgment in this adversary proceeding.

## III. Background

The reason two Chapter 7 trustees are involved in this adversary proceeding is that it is associated with two separate bankruptcy cases. The first, No. 11–61613 (the "Bolon Case"), is the Chapter 7 case that Thomas M. Bolon, Jr. ("Bolon") commenced when he filed a voluntary petition for relief on November 18, 2011 (the "Bolon Petition Date"). The membership interest that Bolon owned in Groves Venture, LLC ("Groves Venture") became property of his bankruptcy estate on the Bolon Petition Date, and David Whittaker (the "Bolon Trustee") was appointed as the Chapter 7 trustee in the Bolon Case. The second case, No. 14–52677 (the "Groves Venture Case"), is the Chapter 7 case that the Bolon Trustee commenced on behalf of Groves Venture on April 17, 2014 (the "Groves Venture Petition Date"). Christal Caudill is the Chapter 7 trustee of the Groves Venture estate (the "Groves Venture Trustee"). Given that this matter is before the Court on motions to dismiss, the facts set forth below are construed in the light most favorable to the Bolon Trustee and the Groves Venture Trustee.

Prior to the Bolon Petition Date, Bolon was the sole member of Groves Venture, which held a 50% membership interest (the "Membership Interest") in another company, Novotec Recycling LLC ("Novotec").[1] Compl. ¶¶ 7, 10, 13; Cross-cl. ¶¶ 5, 7.[2] Novotec's other 50% owner was Onsri Enterprises LLC ("Onsri"). Compl. ¶ 11; Cross-cl. ¶ 8. Bolon authorized Groves Venture to transfer the Membership Interest to Onsri, and the transfer was made on or about June 30, 2011. Compl. ¶ 14; Cross-cl. ¶ 10. Novotec's net equity exceeded $270,000 at the end of the calendar year 2010, and its net income for the entire calendar year 2011 was $1,235,000, resulting in net equity exceeding $933,000 by the end of 2011. Compl. ¶¶ 17–18; Cross-cl. ¶¶ 12–13. Based on these numbers, it appears that the value of Groves Venture's interest in Novotec would have been significantly higher than the approximately $40,000 that Groves Venture received in exchange for transferring the Membership Interest to Onsri. Compl. ¶ 14; Cross-cl. ¶ 11.

As noted above, Bolon commenced his bankruptcy case in November 2011. In March 2012 Onsri merged with Novotec, and the owners of Onsri—Preecha Inthisarn, Mayling Inthisarn and L. Ronald Inthisarn Inthisarns (collectively, the "Inthisarns")—became the owners of Novotec. Compl. ¶ 19; Cross-cl. ¶ 9. About five months after the Onsri–Novotec merger, Groves Warehouse LLC ("Groves Warehouse"), whose members were the Inthisarns and Bolon, was formed. Compl. ¶¶ 20–22.

On July 1, 2013, the two-year look-back period for § 548 fraudulent transfer actions on account of the transfer of the Membership Interest passed without the Bolon Trustee having yet filed the Groves Venture Case. More than four months later, in November 2013, the Bolon Trustee filed the Complaint, naming Onsri, Novotec, Groves Warehouse and the Inthisarns (collectively, the "Moving Defendants")— as well as Groves Venture—as defendants. In his Complaint, the Bolon Trustee alleges that the transfer of the Membership Interest constituted a transfer of Bolon's interest in property because Bolon was the sole member of Groves Venture. Compl. ¶¶ 10, 27. Based on this allegation, the Bolon Trustee seeks to avoid Groves Venture's transfer of the Membership Interest as a fraudulent transfer under § 544(b) of the Bankruptcy Code and Ohio's Uniform Fraudulent Transfer Act, Ohio Rev.Code Ann. §§ 1336.01–1336.11 (West 2015) (the "UFTA"), as well as under § 548 of the Bankruptcy Code (Count I) and to preserve the transfer for the benefit of Bolon's bankruptcy estate (Count II). Id. ¶¶ 26–41. He also requests a money judgment under § 550(a) of the Bankruptcy Code (Count III) against the Moving Defendants (other than Groves Warehouse, with whom he has settled)[3] and a judgment for interest and costs (Count V). Id. ¶¶ 42–44, 52–54. The only other count of the Complaint was Count IV, in which the

---

1. During oral argument on the motions to dismiss, counsel for certain of the defendants used a chart to graphically illustrate the corporate structure and transactions discussed below. Neither the Bolon Trustee nor the Groves Venture Trustee objected to the use of the chart or argued that it was inaccurate. A copy of the chart is attached as an exhibit to this opinion.

2. The document containing the Cross-claim also includes an amended answer of Groves Venture (the "Answer"). The Answer consists of paragraphs 1 through 54, while the Cross-claim contains paragraphs separately numbered 1 through 31.

3. See Notice of Dismissal of Claims Against Groves Warehouse LLC with Prejudice, Adv. Doc. 38.

Bolon Trustee requested a determination that Bolon's membership interest in Groves Warehouse was property of his bankruptcy estate. *Id.* ¶¶ 45–51. The Bolon Trustee previously dismissed Count IV after Bolon paid $40,000 to the Bolon Trustee in connection with the settlement with Groves Warehouse. *See* Adv. Doc. 38 at 2; Doc. No. 83 in the Bolon Case (order authorizing settlement).

The Moving Defendants filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted (the "First Dismissal Motion") (Adv.Doc. 16). In the First Dismissal Motion, the Moving Defendants point out that while both § 544(b) of the Bankruptcy Code (which makes the UFTA applicable) and § 548(a) permit the Bolon Trustee to "avoid any transfer of an interest of the debtor [that is, Bolon] in property," the transfer of the Membership Interest was not a transfer of Bolon's interest in property, but instead was a transfer of Groves Venture's interest in property. First Dismissal Mot. at 5–7. The Moving Defendants contend that the Bolon Trustee's claim under the UFTA must fail for the additional reason that Bolon was not a creditor of Groves Venture. *Id.* at 7–9. The Bolon Trustee filed a memorandum contra to the First Dismissal Motion (Adv. Doc. 21) (the "Mem. Contra") in which he continued to assert that the transfer of the Membership Interest was a transfer of an interest of Bolon in property, Mem. Contra at 7, and the Moving Defendants filed a reply (Adv.Doc. 22) in which they argued that this was not the case. The Groves Venture Trustee also filed a response to the First Dismissal Motion (Adv.Doc. 28).

On June 30, 2014, the Groves Venture Trustee filed her Cross-claim against the Moving Defendants, alleging that the transfer of the Membership Interest constituted a transfer of Groves Venture's interest in property. Cross-cl. ¶ 15. The Groves Venture Trustee alleges that the "transfer of the Membership Interest was made on or within two (2) years prior to the Petition Date," but defines "Petition Date" to mean the Bolon Petition Date (November 18, 2011), not the Groves Venture Petition Date (April 17, 2014). *Id.* ¶¶ 4, 16. Like the Bolon Trustee, she seeks to avoid the transfer of the Membership Interest as a fraudulent transfer under § 548 of the Bankruptcy Code (Count I) and under § 544(b) of the Bankruptcy Code and the UFTA (Count II), *id.* ¶¶ 22–26, 28, and she also requests preservation of the transfer for the benefit of the estate of Groves Venture under § 551 as well as a money judgment against the Moving Defendants (other than Groves Venture) under § 550(a) (Count III). *Id.* ¶¶ 27–31. In her Answer, the Groves Venture Trustee denies that the transfer of the Membership Interest is avoidable by the Bolon Trustee, stating that it instead is avoidable by her. Answer ¶¶ 37–38.

The Moving Defendants have filed a motion to dismiss the Cross-claim, making three arguments in support of dismissal for failure to state a claim upon which relief can be granted (the "Second Dismissal Motion") (Adv.Doc. 34). They first note that while § 548 permits the Groves Venture Trustee to avoid any transfer of an interest of Groves Venture in property that was made "on or within 2 years before the date of the filing of the petition," the transfer of the Membership Interest was not made within two years of the Groves Venture Petition Date. Second Dismissal Mot. at 5–6. The Moving Defendants also take the position that the Groves Venture Trustee's claim under § 544(b) and the UFTA must be dismissed because she does not allege facts making it plausible, as required by the UFTA, that Groves Venture was insolvent at the time of the transfer, became insolvent as a result of it or intended to incur, or believed that it would incur, debts that would be beyond

its ability to pay as such debts matured. *Id.* at 8–9. Finally, the Moving Defendants argue that the Groves Venture Trustee's claim under § 544(b) must be dismissed because she failed to allege facts plausibly suggesting that Groves Venture has an unsecured creditor with an allowable claim who could avoid the transfer of the Membership Interest. *Id.* at 6–7.[4]

## IV. Legal Analysis

### A. Motions to Dismiss for Failure to State a Claim

When deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[c]ourts must accept as true the factual allegations pleaded in the complaint." *DBI Invs., LLC v. Blavin,* 617 Fed.Appx. 374, 380, No. 14–1398, 2015 WL 1379680, at *6 (6th Cir. Mar. 26, 2015). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### B. The Complaint and the First Dismissal Motion

#### 1. The transfer of the Membership Interest was not a transfer of an interest of Bolon in property.

▮ The two sections of the Bankruptcy Code under which the Bolon Trustee seeks to avoid the transfer of the Membership Interest both provide for the avoidance of "any transfer of an interest of the debtor in property." 11 U.S.C. §§ 544(b)(1); 548(a)(1). Faced with this clear statutory language, the Bolon Trustee contends that the transfer of the Membership Interest constituted a transfer of an interest of Bolon in property, not a transfer of an interest of Groves Venture. In response to the Court's inquiry during oral argument whether it therefore should dismiss the Cross-claim filed by the Groves Venture Trustee, the Bolon Trustee admitted that the Membership Interest could not be property of both Bolon and Groves Venture, stating that "I don't think it can be both ways. So my position is that the transfer of [the Membership Interest] was a transfer of an interest of Mr. Bolon in property." But this position is contrary to the undisputed facts and the law. Before its transfer to Onsri, the Membership Interest was held by Groves Venture in another limited liability company, Novotec. And under Ohio law "[a]ny membership interest in a limited liability company is considered personal property of the limited liability company member." *Bd. of Educ. of Whitehall City School Dist. v. Franklin Cty. Bd. of Revision,* No. 01AP–878, 2002 WL 416953, at *3 (Ohio Ct.App.2002). Thus, Groves Venture's Membership Interest in Novotec was personal property of Groves Venture, not Bolon. The Ohio Revised Code dictates this result. "A membership interest in a limited liability company is personal property[,]" Ohio Rev.Code Ann. § 1705.17 (West 2015), "personal property owned or purchased by a limited liability company shall be held and owned in the name of the

---

**4.** The Groves Venture Trustee filed a response to the Second Dismissal Motion (Adv.Doc. 40) ("Second Dismissal Response"), and the Moving Defendants filed a reply to that response (Adv.Doc. 42).

company[,]" and " [c]onveyance of that property shall be made in the name of the company." Ohio Rev.Code Ann. § 1705.34.

■ Ohio courts have interpreted these provisions of the Ohio Revised Code to mean that property owned by a limited liability company is property of the company, not property of the members of the company. *See Ogle v. Hocking Cty.*, No. 14CA3, 2014 WL 6977628, at \*6 (Ohio Ct. App. Dec. 8, 2014) ("Even if we were to assume that the Ogles are the sole members of Ogleshill Farm, LLC, they still do not have standing to sue on its behalf: A membership interest in a limited liability company ... does not confer upon the member any specific interest in company property, whether personal property or real property. Such property is, instead, held and [owned] solely by the company") (internal quotation marks omitted). The Bankruptcy Appellate for the Sixth Circuit ("BAP") and Ohio bankruptcy courts have followed this established legal principle. *See In re Breece*, No. 12–8018, 2013 WL 197399, at \*3 (6th Cir. BAP Jan. 18, 2013) ("A membership interest in a limited liability company [under Ohio law] ... does not confer upon the member any specific interest in company property, whether personal property or real property. Such property is, instead, held and [owned] solely by the company.") (internal quotation marks omitted); *In re Liber*, No. 08–37046, 2012 WL 1835164, at \*4 (Bankr.N.D.Ohio May 18, 2012) ("[T]he Trustee, having only succeeded to the Debtor's membership interest in Nev–Mark, has no specific interest in Nev–Mark's property."); *In re Saunier*, No. 11–60997, 2012 WL 5898601, at \*1 (Bankr.N.D.Ohio Nov. 20, 2012) ("[T]he

real estate [that the Chapter 7 trustee] wants to sell is not property of the bankruptcy estate, but is property of the non-debtor company, Psalms.... Under Ohio law, '[r]eal and personal property owned or purchased by a limited liability company [is] held and owned in the name of the company.' O.R.C. § 1705.34.... What became part of the bankruptcy estate is Debtors' interest in Psalms.").

Because Groves Venture was the member of Novotec whose Membership Interest was conveyed to Onsri, under Ohio law the transfer of the Membership Interest was a transfer of the personal property of Groves Venture, not of Bolon. And "[i]n the absence of a controlling federal law," courts "generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (quoting *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). *See also Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir.2013) ("The nature and extent of property rights in bankruptcy are determined by the underlying substantive law.") (internal quotation marks omitted); *Drown v. JPMorgan Chase Bank, N.A (In re Barnhart)*, 447 B.R. 551, 555 (Bankr.S.D.Ohio 2011) ("Applicable state law governs the extent of a person's interest in property when the Bankruptcy Code does not directly do so."). In light of the governing provisions of the Ohio Revised Code and the decisions of Ohio appellate courts applying those statutory provisions,[5] the

5. *See, e.g., McClatchey v. GMAC Mortg., LLC (In re Lacy)*, 483 B.R. 126, 135 (Bankr. S.D.Ohio 2012) (" '[W]here an intermediate appellate state court rests its considered judgment upon the rule of law which it an-

nounces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' ") (quoting *West v.*

Court has no choice but to conclude that Groves Venture's transfer of the Membership Interest was a transfer of Groves Venture's interest in property, not a transfer of an interest of Bolon.

### 2. The authorities cited by the Bolon Trustee do not support his position.

In support of his argument to the contrary, the Bolon Trustee relies on his interpretation of a decision of the BAP, *In re Underhill*, 498 B.R. 170 (6th Cir. BAP 2013), as well as his interpretation of both the Sixth Circuit's majority opinion in *Underhill v. Huntington National Bank (In re Underhill)*, 579 Fed.Appx. 480 (6th Cir. 2014)—which reversed the BAP—and the dissenting opinion that would have affirmed the BAP. In *Underhill*, the Chapter 7 debtors filed a schedule of personal property in which they stated that their 100% membership interest in a nondebtor limited liability company, Golf Chic Boutique, LLC ("Golf Chic"), had no value. But after the debtors received their bankruptcy discharge and their case was closed, Golf Chic commenced a state court lawsuit asserting a tort claim that appeared to be related to events occurring before the Underhills filed their Chapter 7 case. The lawsuit eventually resulted in an $80,000 settlement in Golf Chic's favor, and one of the members of Golf Chic, debtor Beth Underhill ("Underhill"), "individually received $44,985" from the settlement proceeds, with the remainder being paid to Golf Chic's attorneys. *Underhill*, 498 B.R. at 174. After learning of the settlement, one of the debtors' creditors moved to reopen the debtors' bankruptcy case so that the Chapter 7 trustee could administer the settlement proceeds as an asset of the debtors' bankruptcy estate. The bankruptcy court reopened the case and held that the proceeds indeed were property of the debtors' bankruptcy estate. *Id.* at 175.

On appeal, the BAP affirmed the bankruptcy court's order reopening the case, but in so doing made it clear that the state court claim itself was Golf Chic's property, not property of the debtors. *See id.* at 176 (concluding that "[t]he existence of settlement proceeds from a claim held by the LLC, an entity the Debtors owned entirely, is sufficient evidence of an asset to grant a motion to reopen"). According to the BAP, the settlement proceeds would augment the value of property of the debtors' estate—their membership interest in Golf Chic—only to the extent that excess funds remained after Golf Chic's creditors had been paid in full. *See id.* at 179 ("Under Ohio law, [the] membership interest has value to [the] bankruptcy estate, but only to the extent that the proceeds of the settlement exceed creditor claims against Golf Chic, LLC."). The BAP also "affirm[ed] the bankruptcy court's conclusion that the settlement proceeds received by Debtor Beth Underhill post-discharge were sufficiently rooted in the Debtors' pre-bankruptcy past to require administration of the *net settlement proceeds* by the bankruptcy estate." *Id.* at 177–78 (emphasis added). In so doing, the BAP again stated that the claim asserted by Golf Chic was "Golf Chic, LLC's cause of action." *Id.* at 179.

Importantly, the BAP recognized that Underhill's "interest in the settlement proceeds obtained by Golf Chic, LLC is defined by state law[,]" *id.* at 178–79; that under Ohio law a "membership interest in a limited liability company ... does not confer upon the member any specific interest in company property, whether personal property or real property[,]" *id.* at 179 (internal quotation marks omitted); and

*Am. Tel. & Tel. Co.,* 311 U.S. 223, 237, 61   S.Ct. 179, 85 L.Ed. 139 (1940)).

that "[s]uch property is, instead, held and [owned] solely by the company." *Id.* (internal quotation marks omitted). In other words, the BAP followed the principles of Ohio law that the Court discussed above with respect to the distinction between a property interest consisting of a membership interest in a limited liability company and the property that the company itself owns. Applying those principles, the BAP held that "[u]nder Ohio law, the settlement proceeds of the [state court action] should have been paid to Golf Chic, LLC[,]" and "Underhill, in her capacity as a member of Golf Chic, LLC was required to pay creditors of Golf Chic, LLC [including Gold Chic's attorneys] before she made a distribution to herself on account of her membership interest." *Id.* at 179.

■ During oral argument, the Bolon Trustee represented that he was aware when he commenced this adversary proceeding "of the line of cases that differentiates between property of an LLC and property of a member of that LLC." Yet the Bolon Trustee commenced the adversary proceeding anyway based solely on the BAP's decision in *Underhill.* And relying on that decision alone, the Bolon Trustee argued in his objection to the First Dismissal Motion that "[j]ust as the debtor in *Underhill* had an interest in the settlement proceeds of the LLC making those settlement proceeds property of the bankruptcy estate, [Bolon] had an interest in the Purchase Price for the [Membership Interest]...." Mem. Contra at 7. If the Bolon Trustee had stopped there, he would have been on solid ground. After all, a "membership interest confers upon the member a right to a 'share of the profits and losses of [the] limited liability company and the right to receive distributions from that company.'" *Underhill,* 498 B.R. at 179 (quoting Ohio Revised Code § 1705.01(H)). Bolon's membership inter-

est in Groves Venture therefore provided him a residual interest in the purchase price that had been paid for Groves Venture's Membership Interest in Novotec. But after stating that Bolon "had an interest in the Purchase Price" for the Membership Interest, the Bolon Trustee then concluded that this "thus mak[es] the transfer of the ... Membership Interest a transfer of an interest of [Bolon] in property for purposes of § 548." Mem. Contra at 7. That is a bridge too far, for the conclusion does not follow from the premise. The fact that the net proceeds of the sale of property owned by a limited liability company may under certain circumstances be distributed to the member of the limited liability company in no way leads to the conclusion that the member was in fact the owner of the limited liability company's property. The Bolon Trustee's suggestion otherwise is contrary to the very Ohio law that the BAP applied in *Underhill.* In sum, the BAP's decision— which is the only *Underhill* decision that had been issued at the time the Bolon Trustee commenced this adversary proceeding—does not even remotely support his request to avoid Groves Venture's transfer of the Membership Interest.

In *Underhill,* the BAP remanded the case to the bankruptcy court to determine which part of the settlement proceeds should be paid to the creditors of Golf Chic and which portion should be paid to the debtors' bankruptcy estate on account of their membership interest in Golf Chic. *See Underhill,* 498 B.R. at 179. But the bankruptcy court did not have the opportunity to decide this issue. Instead, before the bankruptcy court received the case on remand, the case was appealed to the Sixth Circuit.

In its decision on appeal from the BAP, the Sixth Circuit began by noting that the debtors had listed their membership inter-

est in Golf Chic as an asset in their bankruptcy case, that Underhill had received the proceeds of a settlement of a lawsuit that Golf Chic commenced after the bankruptcy case was closed and that a creditor of the debtors sought to reopen the bankruptcy case, alleging that "the settlement proceeds constituted property of the bankruptcy estate[.]" *Underhill*, 579 Fed. Appx. at 480. Describing the positions the parties had taken in the bankruptcy court, the Sixth Circuit also noted that the creditor that sought to reopen the case "[a]cknowledg[ed] that the proceeds belonged to the estate only if the cause of action constituted a property interest before the Underhills filed for bankruptcy[.]" *Id.* at 481. In this Court's view, the Sixth Circuit was making clear that the case was postured such that the issue was whether or not the settlement proceeds were property of the debtors' estate. So postured, the Sixth Circuit disagreed with the BAP's holding that Golf Chic's state court lawsuit was sufficiently rooted in events transpiring before the debtors commenced their bankruptcy case, finding that "Golf Chic's cause of action became a property interest after the Underhills filed for bankruptcy[.]" *Underhill*, 579 Fed.Appx. at 480. Noting that "[p]re-petition causes of action belong to the bankruptcy estate and post-petition actions belong to the debtor" in a Chapter 7 case, *id.* at 482, the Sixth Circuit analyzed the ramifications of those principles in the debtors' case and reversed the BAP.

This Court reads the Sixth Circuit's decision in *Underhill* as standing for the following proposition: If a company owns and successfully litigates or settles a claim, any net proceeds of the claim to which an equity holder of the company is entitled (after the company's creditors are paid in full) become property of the equity holder's bankruptcy estate only if the company's claim was tied to events occurring before the equity holder's bankruptcy.

Because Golf Chic's tort claim was not sufficiently rooted in events that took place before the debtors filed their bankruptcy case, their bankruptcy estate was entitled to none of the settlement proceeds they received on account of their membership interest in Golf Chic. Reading *Underhill* in this manner is consistent with the provisions of the Ohio Revised Code and the Ohio appellate court decisions discussed above, and this reading respects the distinction that Ohio law makes between the property of a limited liability company and the property interests of the members of that company.

Although the Sixth Circuit reversed the BAP, there is nothing in its decision suggesting that the BAP was wrong in its application of Ohio law. And it would be surprising if the Sixth Circuit intended its decision to be read as an invitation to ignore Ohio law, especially given the principle acknowledged by the Sixth Circuit in *Underhill* that "[s]tate substantive law determines the 'nature and extent' of causes of action[.]" *Id.* at 482 (quoting *Tyler*, 736 F.3d at 461). Yet the Bolon Trustee contended during oral argument that certain language in *Underhill* implies that Golf Chic's tort claim itself would have been property of the debtors' bankruptcy estate if only the claim had been rooted in the debtors' prebankruptcy past. There indeed is dicta in the majority decision from which one might infer that, as the Bolon Trustee put it, "the Sixth Circuit was thinking that these claims amounted to property of the bankruptcy estate." *See id.* at 480 ("Because Golf Chic's cause of action became a property interest after the Underhills filed for bankruptcy, it cannot qualify as bankruptcy property[.]"), 481 n.1 ("The Underhills also assert that the trustee abandoned any interest in the Golf Chic/Ladies Pro litigation by not administering it before the close of the case. Yet,

because the Underhills failed to include these claims in their schedule of assets, the trustee could not abandon them.").[6] But for the reasons already explained, the Court cannot conclude based on this loose language in *Underhill* that the Sixth Circuit meant to turn Ohio law on its head.

In addition, the Court notes that property becomes property of the bankruptcy estate on the petition date because it was property of the debtor as of the petition date. *See Seafort v. Burden (In re Seafort)*, 669 F.3d 662, 670 (6th Cir.2012) ("With minor exceptions not relevant here, section 541(a) defines as property of the estate only property that the debtor holds on the petition date[.]") (quoting *In re McCullers*, 451 B.R. 498, 503 (Bankr. N.D.Cal.2011)). So Golf Chic's tort claim would have been property of the debtors' bankruptcy estate only if the claim was the debtors' property on the petition date. And the Bolon Trustee conceded during oral argument that it cannot "be both ways." That is, if the tort claim was the debtors' property, then it could not also have been property of Golf Chic. Under the Bolon Trustee's reading of *Underhill*, Golf Chic's claim was not its own, and its creditors would have been left holding the bag. *See Saunier*, 2012 WL 5898601 at *1 ("Permitting Trustee direct access to the assets of Psalms could potentially harm the creditors of Psalms by diverting assets away from them to Debtors' bankruptcy estate. By adhering to the corporate form, assets of the company are retained for the benefit of creditors of the company, not for the benefit of its members...."). Given all of the considerations discussed above, the Court does not read *Underhill* as conflating the distinction governing Ohio law clearly makes between a member's ownership interest in a limited liability company and a limited liability company's ownership interest in its real and personal property.

The Bolon Trustee stated during oral argument that "honestly, Your Honor, [the argument that the transfer of the Membership Interest was a transfer of an interest of Bolon in property is] the only argument that supports my position, and it's the reason I filed the case." Each of the counts of the Complaint is predicated on the Bolon Trustee's position that the transfer of the Membership Interest was a transfer of an interest of Bolon in property. "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made" or "if the facts alleged are insufficient to state a claim[.]" *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 Fed.Appx. 485, 487 (6th Cir.2014). Because the law and the facts alleged provide no support for the sole argument on which the Bolon Trustee relies, the Court must grant the First Dismissal Motion.

## C. The Cross-claim and the Second Dismissal Motion

### 1. The commencement of the Groves Venture Case

For the reasons explained above, Groves Venture's transfer of the Membership Interest was not a transfer of an interest of Bolon in property as required for avoidance of the transfer by the Bolon Trustee under § 544(b) and § 548(a) of the Bankruptcy Code. After the Moving Defendants pointed this out in the First Dismissal Motion, the Bolon Trustee commenced a bankruptcy case for Groves Venture, as he had the right to do. *See Schwartzer v. Cleveland (In re Cleveland)*, 519 B.R. 304,

---

**6.** The dissent expressly stated that "Golf Chic's claims ... appear to have been 'sufficiently rooted in the pre-bankruptcy past' to make them assets of the Underhills' bankruptcy estate." *Id.* at 484.

306 (D.Nev.2014) ("Numerous bankruptcy courts have held, and the Court agrees, that where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights[.]"). It is not difficult to imagine why the Bolon Trustee commenced the Groves Venture Case. If the Groves Venture Trustee were successful in avoiding the transfer of the Membership Interest under § 544(b) or § 548(a), the transfer would be preserved for the benefit of Groves Venture's bankruptcy estate because "[a]ny transfer avoided under section[s] . . . 544[or] 548 . . . is preserved for the benefit of the estate[.]" 11 U.S.C. § 551. The Membership Interest itself would then be property of Groves Venture's estate under § 541(a)(4) of the Bankruptcy Code, which makes "[a]ny interest in property preserved for the benefit of . . . the estate under section . . . 551 of this title" property of the estate. 11 U.S.C. § 541(a)(4).

In addition, any monetary recovery that the Groves Venture Trustee obtained under § 550 of the Bankruptcy Code on account of the avoidance of the Membership Interest would be property of Groves Venture's estate as an "interest in property that the trustee recovers under section . . . 550[.]" [7] 11 U.S.C. § 541(a)(3). Of course, the Groves Venture Trustee would have to use any such recovery to pay claims and expenses against the bankruptcy estate of Groves Venture first. But based on the principles of Ohio law discussed above, the membership interest of Bolon in Groves Venture would have entitled him to a distribution from Groves Venture's bankruptcy estate after claims and expenses against that estate were paid in full, and upon the filing of Bolon's bankruptcy case the Bolon Trustee succeed to the rights of Bolon as the member of Groves Venture. It thus made sense for the Bolon Trustee to commence a bankruptcy case for Groves Venture as a means of potentially garnering assets for the Bolon bankruptcy estate from the Groves Venture Trustee's avoidance actions under § 544(b) and § 548(a).

### 2. The Groves Venture Trustee's § 548(a) claim

■ The Bolon Trustee, however, commenced the Groves Venture Case too late for the Groves Venture Trustee's § 548(a) claim to be viable. Under § 548(a)(1), a trustee may avoid certain transfers "of an interest of the debtor in property" only if the transfers are "made . . . on or within 2 years before the date of the filing of the petition[.]" 11 U.S.C. § 548(a)(1). The transfer of the Membership Interest occurred on or about June 30, 2011. That meant that the trustee in any bankruptcy case commenced for Groves Venture would have the ability to avoid the transfer of the Membership Interest under § 548(a)(1) only if the Groves Venture bankruptcy case was commenced no later than two years after June 30, 2011. But the Bolon Trustee filed the petition commencing the Groves Venture case on April 17, 2014, more than two years and nine months after the transfer of the Membership Interest. In an effort to avoid the conse-

---

7. Section 550(a) states:
   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 [or] 548 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.
   11 U.S.C. § 550(a).

quences of this delay in filing the Groves Venture Case, the Groves Venture Trustee, while noting that the Groves Venture Petition Date was April 17, 2014, identified the "Petition Date" for purposes of her § 548(a) avoidance action as November 19, 2011, which is Bolon Petition Date. Cross-claim ¶¶ 4, 16 And during oral argument, she reiterated that for purposes of avoiding the transfer of the Membership Interest under § 548(a) she was relying on the Bolon Petition Date, not the Groves Venture Petition Date.

The Groves Venture Trustee, however, did not offer any authority for her position that the Bolon Petition Date could be used to determine the timeliness of her avoidance action under § 548(a). Nor is the Court aware of any precedent that would support this position. "In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim under § 548(a)(1) ... the complaint must contain sufficient facts plausible on their face that establish that the debtor ... made a transfer within two years of the bankruptcy filing[.]" *Southeast Waffles, LLC v. United States Dep't of Treasury (In re Southeast Waffles, LLC)*, 460 B.R. 132, 138 (6th Cir. BAP 2011), *aff'd*, 702 F.3d 850 (6th Cir.2012); *see also Cerrato v. BAC Home Loans Servicing (In re Cerrato)*, 504 B.R. 23, 34–35 (Bankr. E.D.N.Y.2014) ("Cerrato's claim under § 548 of the Bankruptcy [C]ode must be dismissed because the Foreclosure Sale took place more than two years prior to the commencement of the bankruptcy case, and thus, outside of the statutory look-back period under § 548"). Because the time elapsed between the transfer of the Membership Interest and the filing of

Groves Venture's bankruptcy petition exceeded two years, the Court must dismiss the Groves Venture Trustee's § 548(a) claim.

### 3. The Groves Venture Trustee's § 544(b) claim

■ That leaves the Groves Venture Trustee's claim under § 544(b) and the applicable state law it incorporates, which in this case is the UFTA. Under § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). Thus, "[i]n order for [the] trustee to have standing to avoid a transfer under § 544(b)," there must be a creditor who can avoid the transfer under applicable state law who also "hold[s] an unsecured claim that is allowable under 11 U.S.C. § 502[.]" *Solomon v. Fellmy (In re Felsner)*, 289 Fed.Appx. 879, 883 (6th Cir.2008) (internal quotation marks omitted). This creditor is sometimes denominated the "triggering creditor." *See, e.g., Official Comm. of Unsecured Creditors v. NewKey Grp., LLC (In re SGK Ventures, LLC)*, 521 B.R. 842, 856 n. 9 (Bankr.N.D.Ill.2014).

■ The trustee need not "plead the existence of [the triggering] creditor by name[.]" *Felsner*, 289 Fed.Appx. at 883. But here the Cross-claim does not even allege facts plausibly suggesting that Groves Venture has *any* creditor holding an allowable unsecured claim as of the Groves Venture Petition Date.[8] The closest

---

8. Defendants in other fraudulent-transfer actions have argued that the allowability of a purported triggering creditor's claim should be assessed as of the date the court hears the fraudulent transfer action and that a creditor's failure to file a proof of claim means that

its claim is not "allowable" within the meaning of § 544(b). Most courts, though, have held that the allowability of a creditor's claim for purposes of § 544(b) should be determined as of the petition date and that the failure to file a proof of claim therefore does

the Cross-claim comes to including such facts is when it sets forth the elements of a claim for actual fraudulent transfer in Count I of the Cross-claim, stating that "[t]he transfer [of the Membership Interest] was made by [Groves Venture] with actual intent to hinder, delay, or defraud creditors that [Groves Venture] and Debtor Bolon was [sic] indebted to at the time, or became indebted to on or after the date that the transfer of the Membership Interest was made." Cross-cl. ¶ 20. Even if the Court were to construe that statement as something more than a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft*, 556 U.S. at 678, 129 S.Ct. 1937, it still would be insufficient. For unlike pleadings asserting § 544(b) claims that have survived motions to dismiss, the Cross-claim does not suggest

that there is "at least one creditor of [Groves Venture] ... who holds an allowed unsecured claim against [Groves Venture] ... allowable under Bankruptcy Code § 502." *Klein v. Bd. of Tr. (In re Moriarty)*, No. 14–1131, 2014 WL 6623005, at *11 (Bankr.C.D.Cal.Nov.20, 2014). Rather, paragraph 20 of the Cross-claim indicates only that Groves Venture was indebted to certain creditors at the time it transferred the Membership Interest or that it became indebted to them either on the date of the transfer or after it was made. Groves Venture transferred the Membership Interest on or about June 30, 2011. Assuming that Groves Venture had a creditor on or about June 30, 2011, there is nothing in the Cross-claim that would lead the Court to infer that Groves Venture therefore had a creditor when the Groves Venture Case

not disqualify a creditor from being the triggering creditor. *See, e.g., Finkel v. Polichuk (In re Polichuk)*, 506 B.R. 405, 432 (Bankr. E.D.Pa.2014) (citing cases); *In re Kopp*, 374 B.R. 842, 846 (Bankr.D.Kan.2007) (same). *But see Campbell v. Wellman (In re Wellman)*, No. 97–01350, 1998 WL 2016787, at *3 (Bankr.D.S.C. June 2, 1998) ("[A]s Robert McKittrick was the only creditor of these three to file a proof of claim, he is the only one with an allowable claim into whose shoes the Trustee may step pursuant to § 544(b)."). Without deciding the issue, the Court will assume for the sake of this opinion that the majority line of cases is correct and that in order to survive dismissal the Groves Venture Trustee need plausibly suggest the existence of a creditor holding an allowable unsecured claim as of the Groves Venture Petition Date.

Under the UFTA, a transfer that is alleged to be constructively fraudulent based on the transferor's insolvency may be avoided only by "a creditor whose claim arose before the transfer was made[.]" Ohio Rev.Code Ann. § 1336.05(A). That is, in order to use § 544(b) to avoid the transfer of the Membership Interest as a constructively fraudulent transfer under Ohio Revised Code § 1336.05(A), the Groves Venture Trustee would need to demonstrate the existence of at

least one unsecured creditor of Groves Venture at the time of the transfer of the Membership Interest on or about June 30, 2011. By contrast, a fraudulent transfer undertaken with actual fraudulent intent or under certain other circumstances may be avoided by a creditor "whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made[.]" Ohio Rev.Code Ann. § 1336.04(A). But under § 544(b) the Groves Venture Trustee must demonstrate the existence of an unsecured creditor with an allowable unsecured claim as of the petition date regardless of whether she is relying on § 1336.04(A) or § 1336.05(A). As discussed below, the Cross-claim does not plausibly suggest the existence of a creditor holding an allowable unsecured claim as of the Groves Venture Petition Date, and the Groves Venture Trustee's § 544(b) claim must be dismissed for that reason alone. The Court accordingly need not and does not reach the question of whether the Cross-claim sufficiently alleges (1) the existence of a creditor as of June 30, 2011 who could have avoided the transfer of the Membership Interest as a constructive fraudulent transfer under Ohio Revised Code § 1336.05(A) or (2) the existence of a creditor who could have avoided the transfer under Ohio Revised Code § 1336.04(A).

was commenced approximately three years later.[9]

In response to the Second Dismissal Motion, the Groves Venture Trustee proposed various candidates for the triggering creditor based on facts that were not set forth in the Cross-claim. In the Second Dismissal Response, she speculated that Groves Venture may have guaranteed or secured the debt of Bolon or Novotec, potentially giving some entity a claim against Groves Venture. Second Dismissal Resp. at 4. Yet no entity filed a proof of claim on account of any such guarantee or provision of security, and the deadline for entities other than governmental units to file proofs of claim in the Groves Venture Case passed on August 25, 2014.[10] If the Groves Venture Trustee—after conducting a proper investigation—believed that a creditor held an allowable unsecured claim, she could have filed a proof of claim on behalf of that creditor within 30 days after the expiration of the bar date (i.e., by September 24, 2014),[11] but that date came and went without the Groves Venture Trustee filing a proof of claim on behalf of anyone. While the Groves Venture Trustee also conjectured "that the Internal Revenue Service, State of Ohio, and/or city taxing authorities are creditors of Groves Venture[,]" Second Dismissal Resp. at 3, no taxing authority filed a proof of claim in the Groves Venture Case. Again, if the Groves Venture Trustee's investigation led her to believe that a taxing authority held an allowable unsecured claim as of the Groves Venture Petition Date, she could have filed a proof of claim within 30 days after the expiration of the governmental claims bar date (i.e., by November 13, 2014) on behalf of that taxing authority, but she failed to do so. True, under the majority line of cases discussed above, *see supra* n. 8, the allowability of an unsecured claim for purposes of § 544(b) is determined as of the petition date, and the lack of a proof of claim filed by or on behalf of a creditor holding an otherwise allowable unsecured claim does not disqualify that creditor from being the triggering creditor. But in order to survive dismissal, the Groves Venture Trustee must offer more than mere speculation that an unsecured creditor with an allowable claim might exist. She has not done so. In short, nothing in the Cross-claim plausibly suggests that any entity had an allowable claim against Groves Venture as of the Groves

---

9. The lack of a triggering creditor alone requires the Court to dismiss the Groves Venture Trustee's actual and constructive fraudulent transfer claims under the UFTA as incorporated by § 544(b). The Court accordingly need not and does not address the Moving Defendants' argument that the Groves Venture Trustee's constructive fraudulent transfer claim under Ohio Revised Code § 1336.05(A) must be dismissed because she does not allege facts plausibly suggesting that Groves Venture was insolvent at the time of the transfer of the Membership Interest or became insolvent as a result of the transfer.

10. The Court may "take judicial notice of claims filed in the bankruptcy in order to identify a triggering creditor under 11 U.S.C. § 544." *SGK Ventures,* 521 B.R. at 856 n. 9.

Further, the Court may consider such "matters of public record [and] items appearing in the record of the case" when deciding motions to dismiss under Civil Rule 12(b)(6). *Shaughnessy v. Interpublic Grp. of Cos., Inc.,* 506 Fed.Appx. 369, 372 (6th Cir.2012) (internal quotation marks omitted).

11. Rule 3004 of the Federal Rules of Bankruptcy Procedure states:

If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee.

Venture Petition Date, and nothing that the Groves Venture Trustee has done since she filed the Cross-claim has made the existence of a creditor holding an allowable unsecured claim any more plausible.

■ It was only during oral argument that the Groves Venture Trustee proffered the final candidate for the triggering creditor—Bolon himself. Of course, if Bolon has a claim against Groves Venture, the Bolon Trustee would have the right to assert it on his behalf, for the Bolon Trustee has "the rights of the debtor[.]" *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 656 (Bankr.S.D.Ohio 2006) (internal quotation marks omitted). Indeed, the Bolon Trustee filed a proof of claim in the Groves Venture Case the day before oral argument. In analyzing why Bolon nonetheless cannot be the triggering creditor, it is helpful to keep in mind that the Bolon Trustee "has a dual role" in that he not only has the rights of the debtor, but also the rights of creditors under laws, such as the fraudulent transfer statutes, that "allow[ ] the trustee to step into the shoes of a debtor's creditors." *Id.* (internal quotation marks omitted). The manner in which the Bolon Trustee filed the proof of claim makes it appear that he was filing it in an exercise of the rights of creditors of Bolon. The Bolon Trustee did not identify Bolon as the creditor in the proof of claim. Instead, he identified the creditor as "David M. Whittaker, Trustee" and asserted an unsecured claim in the estimated amount of $450,000 "for avoidance of fraudulent transfer," the transfer being the one that is the subject of his Complaint, which the Bolon Trustee attached to his proof of claim.[12] In other

words, the bases for the Bolon Trustee's proof of claim are the fraudulent transfer causes of action set forth in the Bolon Trustee's Complaint—causes of action that, as discussed above, fail to state a claim upon which relief can be granted. There is no way that a proof of claim based on causes of action that fail to state a claim upon which relief can be granted could become an allowed claim in the Groves Venture Case.

Further, even if Bolon or the Bolon Trustee had a viable claim for recovery of a fraudulent transfer or its value, the claim would lie only against a direct or indirect transferee of the transfer or an entity for whose benefit the transfer was made. *See* 11 U.S.C. § 550. Groves Venture was neither a transferee of the Membership Interest nor an entity for whose benefit the transfer was made; instead, it was the transferor of the interest. So any claim that exists on account of the transfer of the Membership Interest simply is not a claim against Groves Venture.

■ Finally, even if the transfer of the Membership Interest gave rise to a claim against Groves Venture, and even if the Bolon Trustee's proof of claim were construed as having been filed as an exercise of Bolon's rights, the proof of claim still would not provide the Groves Venture Trustee with the triggering creditor she needs. This is because Bolon would have no right to bring the claim, and the Bolon Trustee therefore would have no right to assert it on his behalf. First, the Cross-claim alleges that Bolon was a member of Groves Venture, not a creditor. Cross-cl. ¶ 5. As a member of Groves Venture, Bolon was "an equity holder [who] has no

---

12. The Bolon Trustee included on Groves Venture's Schedule F a claim by Bolon "for any surplus funds after the liquidation of [Groves Venture's] assets and dis[t]ribution to [its] creditors[,] aris[ing] as a result of [Bo-

lon's] membership interest in [Groves Venture]." Groves Venture Case, Doc. 1 at 12. The Bolon Trustee, however, did not include any such claim in his proof of claim.

standing to prosecute a ... fraudulent conveyance action." *In re Revco D.S., Inc.*, 118 B.R. 468, 475 (Bankr.N.D.Ohio 1990). Second, the Complaint alleged that Bolon authorized Groves Venture to transfer the Membership Interest to Onsri, Compl. ¶ 14, an allegation that the Groves Venture Trustee admitted. Answer ¶ 14. Bolon therefore "cannot be the triggering creditor, because [he] was a material participant in the alleged fraudulent transaction." *Miller v. CSFB (In re Refco, Inc. Sec. Litig.*, No. 09–2885, 2009 WL 7242548 at *11 (S.D.N.Y. Nov. 13, 2009); *see also U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 479 B.R. 405, 411 (Bankr. N.D.Tex.2012) ("Because of their participation in the alleged fraudulent transfers, Idearc's banks and bondholders would have been barred from bringing fraudulent transfer claims on the date Idearc filed its bankruptcy petition"). Because the Groves Venture Trustee has failed to point to anything establishing the plausibility of the existence of a creditor holding an allowable unsecured claim against Groves Venture as of the Groves Venture Petition Date, the Court must dismiss her § 544(b) claim.

## V. Conclusion

For these reasons, the Court **GRANTS** the First Dismissal Motion and the Second Dismissal Motion. The Complaint and the Cross-claim are **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted. The Court will enter a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**

Owners:
Preecha Inthisarn
Mayling Inthisarn
Roland Inthisarn

Onsri Enterprises LLC
(owned 50% of Novotec)

December 31, 2010 – Onsri reached an agreement with Groves Ventures LLC through negotiating with Thomas Bolon to purchase Groves Ventures 50% ownership interest in Novotec for $40,000

June 30, 2011 – closing for Groves Ventures selling its 50% interest in Novotec for $40,000 to Onsri

March 1, 2012 – Onsri merges into Novotec

Novotec
Recycling LLC

Groves Ventures LLC
(owned 50% of Novotec)

Owner:
Thomas Bolon

November 18, 2011 – Thomas Bolon filed bankruptcy

2014 - David Whittaker, Trustee for Thomas Bolon files bankruptcy for Groves Ventures; Christal Caudill appointed Chapter 7 Trustee of Groves Ventures